Shirley J. MITCHELL, Plaintiff–Appellant,

v.

TOLEDO HOSPITAL, Defendant–Appellee.

No. 91–3268.

United States Court of Appeals, Sixth Circuit.

Submitted Sept. 30, 1991.

Decided May 21, 1992.

William J. Peters (briefed), Toledo, Ohio, for plaintiff-appellant.

Michael S. Scalzo (briefed), Marshall & Melhorn, Toledo, Ohio, for defendant-appellee.

* The Honorable Gerald E. Rosen, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. This is actually the second lawsuit Ms. Mitchell has filed against her former employer, Toledo Hospital. In 1986, she filed a race and age discrimination suit against the hospital which was predicated on the hospital's promotion of a younger white female co-worker instead of her to a position for which both Ms. Mitchell and the white co-worker had applied and were interviewed. As in this case, Plaintiff alleged separate causes of action under the Fourteenth Amendment, Section 1981, Section 1983, Title VII and ADEA.

The District Court granted the hospital's motions to dismiss and for summary judgment in that "denial of promotion" suit on June 19, 1987 and May 25, 1988, finding that there was no legal basis for Plaintiff's allegations of violation of the Fourteenth Amendment and Section 1981 and 1983, and subsequently finding, with re-

Before: JONES and NELSON, Circuit Judges; and ROSEN, District Judge.*

ROSEN, District Judge.

Plaintiff Shirley Mitchell appeals the District Court's entry of summary judgment in favor of Defendant Toledo Hospital in this race and age discrimination/termination of employment action. For the following reasons, we affirm the decision of the District Court.

## I. INTRODUCTION

This is a race and age discrimination/termination of employment case. In her Complaint filed in the U.S. District Court for the Northern District of Ohio on December 8, 1989, Plaintiff alleged that her discharge from employment at the Defendant hospital on December 12, 1988 was in violation of the Fourteenth Amendment, 42 U.S.C. §§ 1981 and 1983, Title VII, the ADEA and Sections 4112.02(A) and 4112.99 of the Ohio Revised Code. Paragraph 1 of Plaintiff's Complaint also contained a passing allegation that Ms. Mitchell had once been denied a promotion at the hospital because of her race, but she admitted in her deposition that this lawsuit only dealt with her discharge and her attorney confirmed that the allegation in the Complaint was a "misprint".[1]

In an Opinion and Order dated February 14, 1991, the District Court granted the

spect her Title VII and ADEA claims, that Plaintiff had failed to show that a genuine issue of material fact existed as to whether the hospital's articulated reasons for the employment decision were pretextual. (In that case, the District Court made no determination as to whether Ms. Mitchell had established a *prima facie* case.)

The Sixth Circuit affirmed the District Court in that denial-of-promotion case in an unpublished opinion on June 23, 1989.

In her deposition in the instant action, Ms. Mitchell further admitted that she has no evidence of having been denied a promotion because of her race or her age other than the evidence given by her in her deposition in the prior litigation. Thus, even if she and her attorney had not withdrawn the denial of promotion allegations, she would be barred from proceeding with a denial of promotion claim by virtue of the doctrine of *res judicata*.

Defendant's Motion for Summary Judgment, finding that Plaintiff had failed to establish a *prima facie* case of race or age discrimination, and even assuming *arguendo* that she did establish a *prima facie* case, Plaintiff failed to establish that the non-discriminatory reason given by the hospital for her discharge—misuse of hospital property—was pretextual. A Judgment of dismissal was accordingly entered on February 20, 1991.

Plaintiff timely filed her Notice of Appeal to the Sixth Circuit.

## II. FACTUAL BACKGROUND

Plaintiff Shirley Mitchell is a 51–year old black female who had been employed by Defendant Toledo Hospital ("the Hospital") for 29 years prior to the termination of her employment in December 1988. At the time of her discharge, Ms. Mitchell was employed as an accounts examiner.[2] As an accounts examiner, Ms. Mitchell was responsible for billing Welfare for charges incurred by Welfare patients at the Hospital. It was Ms. Mitchell's responsibility to review the appropriate forms and make sure they were correctly filled out before sending them to Welfare so that the Hospital could be reimbursed for the patients' charges by that agency.

On December 5, 1988, certain "Sterilization Consent Forms" (the "forms") turned up missing. The forms had been seen in a box on a coffee table in the office two days earlier. Because her "team leader" and immediate supervisor, Martha Holmes, was absent, she went to Ron Wachsman, the "billing manager" who apparently was Plaintiff's supervisor's supervisor, and asked him if he had seen the box of forms that had been on the coffee table.

Wachsman told Ms. Mitchell that he had recently moved the coffee table but did not indicate to her whether he had seen any box of forms on the table. *See* J.A. 63. From Wachsman's statement that he had moved the coffee table, Ms. Mitchell surmised that he must have set the box of forms on the floor and that housekeeping might have thrown the box in the trash. *Id.* Plaintiff then proceeded to look for the box of forms for two or three hours on December 5th but to no avail.

Around 8 o'clock in the morning the next day, Tuesday, December 6, 1988, Plaintiff found the box of forms in the hospital basement. She took the box to her office and placed it under her desk. Plaintiff testified at her deposition that on December 6th she only told one person—Cathy Brown, one of Plaintiff's co-workers—that she had found the forms. J.A. 83. She did not tell any of her supervisors. *Id.*

Plaintiff subsequently told three of her fellow welfare accounts examiners about finding the forms, and she and these three co-workers agreed to play a "practical joke" on Wachsman:

[MITCHELL]

A: I remember we were jokingly, Mary [Mihalko], Sue [Sheronick], Cindy [Dawson] and I, saying that we weren't going to tell Ron Wachsman until, jokingly, December....

[DEFENSE COUNSEL]

Q: You said until December. It was December.

A: Christmas I was saying. We were jokingly saying it.

Q: You were not going to tell Ron until the day before Christmas?

A: Uh-huh, or something like that.

Q: Was it you or the—

A: Mary Mihalko and I jokingly said it.

Q: Okay.

A: And Cindy said yes, he doesn't need to know anytime soon.

Q: Who said it first?

A: We all said it in unison.

Q: You all said it in unison?

A: Uh-huh, and I said not until Christmas.

Q: You were the one that said not until Christmas. That was going to be his Christmas present or what?

---

2. There were five accounts examiners in Plaintiff's department at the time of Plaintiff's discharge.

A: No. It was said jokingly....
J.A. at 80–82.

A couple of hours later that morning, Mitchell's supervisor, Ronald Wachsman asked her if she had seen the forms. She denied having seen them, even though she knew that she had them under her desk.[3] She kept the forms hidden under her desk for another day and then moved them to her personal file cabinet which she locked with a key. On Thursday morning, December 8, Plaintiff was advised by a co-worker that Mr. Wachsman and Mr. Mike Swick, another supervisor, had been looking for the forms and had looked under her desk on Wednesday evening. Later on Thursday, Mr. Wachsman again asked Plaintiff if she had located the forms and she again denied having seen them.

On Friday, December 9, Mr. Wachsman called Ms. Mitchell into his office and informed her that the forms had been found. When he asked her why she had not told him that she had found them, Mitchell replied that "she wanted him to stew in his own mess." J.A. at 89.

Plaintiff was informed that her actions constituted a misuse of Hospital property, a terminable offense according to the Hospital's employee handbook. The Hospital's five member review board was convened and unanimously agreed that discharge was the appropriate disciplinary action.

Accordingly, on Monday, December 12, 1988, in a meeting with Mr. Wachsman and Mr. Baranski of the hospital's Human Resources department, Plaintiff was advised that her employment was terminated. Mitchell then brought the instant action, claiming that she was terminated because of her race and her age.

### III. PLAINTIFF'S ARGUMENTS IN THE DISTRICT COURT AND IN THIS APPEAL

While Plaintiff alleged in her Complaint that the hospital has not terminated any white or younger employees for the same type of conduct in which she engaged, she admitted at her deposition that she knows of no white employees or employees under the age of 40 who engaged in similar conduct and were not discharged. Her only basis for her claims of discrimination is her contention that a lot of white people have not been discharged who have done what Plaintiff believes were worse things than what she did. However, at her deposition she could only identify two non-minority employees, Karen Lind, one of Plaintiff's fellow account examiners whom Plaintiff claims had a poor absentee record, and Bobbie Walley, an employee in charge of filing, who in 1987 once cursed her team leader. Neither of these two individuals was fired, and Plaintiff believes that they were afforded more lenient treatment because they were white.

Additionally, after Defendant moved for summary judgment, Plaintiff submitted with her Response to the Summary Judgment Motion a hearsay Affidavit, which is dated February 8, 1991, seven months after her deposition, in which she states that she had "been advised by [unidentified] employees of Toledo Hospital" that at some unspecified point in time, two white female employees, Connie Kortgoede and Karen Lind, kept medicare checks and personal checks payable to Toledo Hospital hidden in their desks for two years but the only disciplinary action taken against either woman was that one of them was transferred out of the Billing Department to another department.

Further, although Plaintiff admits having hidden the subject forms as described above, and admits having intentionally misled her supervisor every time he asked her if she had seen them, Plaintiff argues that her hiding the forms from her supervisor does not constitute a misuse of Hospital property—which was the reason given for her discharge. Rather, she contends that because she had hidden the forms under her desk and in her filing cabinet, "[a]t no

---

**3.** Ms. Mitchell testified at her deposition that she decided not to tell her supervisors about having found the forms "as a practical joke." The subject forms were not blank forms, but rather forms that were already filled out and ready to be reviewed and/or sent to Welfare, and represented several hundred thousand dollars of income to the hospital.

time after December 6, 1988 were the forms any place than in a proper location. [T]he forms after being found did not leave the Hospital Billing Department. The Hospital property was under lock and key for approximately twenty four (24) hours and certainly were not misused."

### IV. THE DISTRICT COURT'S DECISION

Applying the four-part *McDonnell Douglas* test for a *prima facie* showing of discrimination, *i.e.*, showing that the plaintiff

(1) was a member of a protected class,

(2) was discharged,

(3) was qualified for the position, and

(4) was replaced by a person outside the class,

the District Court determined that Plaintiff failed to establish a *prima facie* case of race or age discrimination because "nowhere in the record is it alleged that she was replaced by a person outside the [protected] class." Further, noting that Plaintiff could also have established a *prima facie* case by presenting credible, direct evidence of discrimination, the Court observed that Mitchell had not presented any such evidence.

The District Court went on, however, to hold that even assuming *arguendo* that Mitchell had met all four prongs of the *McDonnell Douglas* test, the Hospital had articulated a legitimate, nondiscriminatory reason for her discharge—misuse of Hospital property—and Plaintiff failed to establish that the Hospital's reason was pretextual. In so doing, the Court held that Ms. Mitchell's hearsay affidavit, regarding what she had been told by unnamed Hospital employees about the two woman who had kept medicare and personal checks in their desk drawers but had either not been disciplined or received lesser discipline, failed to satisfy the requirements of Fed. R.Civ.Pro. 56(e) which requires that affidavits in support of, or in opposition to, a motion for summary judgment be made on personal knowledge, set forth such facts as would be admissible into evidence and show affirmatively that the affiant is competent to testify to the matters stated therein.

Therefore, the Court refused to consider the affidavit, and because all that Ms. Mitchell had offered in support of her claims were "mere allegations of discrimination", it entered summary judgment in favor of the Hospital.

### V. DISCUSSION

### A. THE STANDARDS GOVERNING REVIEW OF A GRANT OF A MOTION FOR SUMMARY JUDGMENT

The general standard that an appellate court applies in reviewing the grant or denial of a summary judgment motion is the same standard utilized by the trial court initially: As provided in Fed.R.Civ. Pro. 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions of file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

The principles governing consideration of motions for summary judgment were redefined by the United States Supreme Court in a 1986 trilogy of cases: *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); and *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The Sixth Circuit expressly adopted the Supreme Court trilogy's "new era" in summary judgment practice in its recent decision in *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989).

In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Supreme Court held:

The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by

a *preponderance of evidence* that the plaintiff is entitled to a verdict.... 106 S.Ct. at 2512 (emphasis added). The "mere possibility" of a factual dispute is not enough. *Gregg v. Allen–Bradley Co.,* 801 F.2d 859, 863 (6th Cir.1986). Rather, in order to defeat summary judgment a plaintiff "must come forward with more persuasive evidence to support [his or her] claim than would otherwise be necessary." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 1350, 1356, 89 L.Ed.2d 538 (1986). Where the defendant demonstrates that after a reasonable period of discovery the plaintiff is unable to produce sufficient evidence beyond the bare allegations of the complaint to support an essential element of his or her case, summary judgment should be granted. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). *See also, Street v. J.C. Bradford & Co., supra,* 886 F.2d at 1478–1480.

B. THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANT HOSPITAL.

1. *The District Court Properly Applied the McDonnell Douglas/Burdine Evidentiary Framework to Plaintiff's Claims of Discrimination.*

■ The *McDonnell Douglas/Burdine* formula is the evidentiary framework applicable not only to claims brought under Title VII, but also to claims under ADEA, *Laugesen v. Anaconda Co.,* 510 F.2d 307 (6th Cir.1975), to claims of discrimination under Ohio state law, *In re Brantley,* 34 Ohio App.3d 320, 518 N.E.2d 602 (1987), and to claims under 42 U.S.C. § 1981, *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 2378, 105 L.Ed.2d 132 (1989). Therefore, the District Court correctly "lumped together" Plaintiff's Title VII, ADEA, Section 1981 and Ohio state law theories of discrimination and applied

the *McDonnell Douglas/Burdine* evidentiary framework in analyzing the factual and legal merits of Plaintiff's claims.

2. *Plaintiff Failed to Establish a Prima Facie Case of Race Or Age Discrimination.*

■ It is well-established that the burden is on an employment discrimination plaintiff to establish a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1972); *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981).

As the District Court explained, under *McDonnell Douglas* and *Burdine,* Plaintiff can establish a *prima facie* case of discrimination by showing that (1) she was a member of a protected class; (2) she was discharged; (3) she was qualified for the position; and (4) she was replaced by a person outside the class.[4]

The District Court held that Plaintiff satisfied the first three *McDonnell Douglas/Burdine* elements but failed to satisfy the fourth element—*i.e.,* she failed to show that she was replaced by a white or younger person. Therefore, the District Court held that Plaintiff failed to establish a *prima facie* case of either race or age discrimination.

Although the District Judge found no *prima facie* case had been established by Plaintiff because of the lack of the fourth "replaced-by-a-'non-protected'-person" element of the *McDonnell Douglas/Burdine* criteria, a plaintiff can also make out a *prima facie* case by showing, in addition to the first three elements, that "a comparable non-protected person was treated better".

As the Sixth Circuit has frequently phrased the requirements of a *prima facie* claim of disparate treatment using such a "comparable non-protected person was

---

4. The District Court also correctly noted that Plaintiff could have alternatively established her *prima facie* case by presenting credible, direct evidence of discriminatory intent. *See Terbovitz v. Fiscal Court of Adair County,* 825 F.2d 111

(6th Cir.1987). However, she did not present any such direct evidence and, therefore, the Court properly proceeded with application of the *McDonnell Douglas/Burdine* formula.

treated better" element as one of the requisites, the plaintiff must produce evidence which at a minimum establishes (1) that he was a member of a protected class and (2) that for the same or similar conduct he was treated differently than similarly-situated non-minority employees. *See e.g., Davis v. Monsanto Chemical Co.,* 858 F.2d 345 (6th Cir.1988), *cert. denied,* 490 U.S. 1110, 109 S.Ct. 3166, 104 L.Ed.2d 1028 (1989); *Long v. Ford Motor Co.,* 496 F.2d 500 (6th Cir. 1974).

It appears that it is under this formula that Plaintiff here attempted to make out her case. She alleges that one non-minority Hospital employee, Karen Lind, had a poor attendance record. She also alleges that, in 1987, Bobbie Walley, an employee in charge of filing, cursed at her team leader. But neither Lind nor Walley was fired.

According to Plaintiff, these "facts" establish a *prima facie* case that non-minority employees, guilty of conduct of "comparable seriousness" to the conduct for which she was fired, received more lenient treatment.

However, as the facts of this case demonstrate, Plaintiff's allegations regarding other employees not being fired for different, but what she subjectively believes to be more serious, misconduct simply does not satisfy that element either.

It is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the "comparables" are similarly-situated *in all respects. Stotts v. Memphis Fire Department,* 858 F.2d 289 (6th Cir.1988). Thus, to be deemed "similarly-situated", the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. *Mazzella v. RCA Global Communications, Inc.,* 642 F.Supp. 1531 (S.D.N.Y.1986), *aff'd,* 814 F.2d 653 (2d Cir.1987); *Lanear v. Safeway Grocery,* 843 F.2d 298 (8th Cir.1988) (plaintiff must prove that he and the white employee were similarly situated in all respects and that the other employee's acts were of comparable seriousness to his own); *Cox v. Electronic Data Systems Corp.,* 751 F.Supp. 680 (E.D.Mich.1990).

Plaintiff produced no facts to establish that the two white employees she identified as not having been fired were "similarly situated in all respects". Moreover, she did not produce sufficient information about Ms. Lind's alleged absenteeism and Ms. Walley's insubordination to indicate whether the absenteeism and insubordination were of "comparable seriousness" to the conduct for which Plaintiff was discharged.[5]

---

**5.** The dissent would hold that Plaintiff has established a *prima facie* case. This determination is based principally upon the dissent's conclusion that Ms. Walley's conduct in allegedly once swearing at her team leader was of "comparable seriousness" to Plaintiff's deliberate concealment of records on which the hospital depended for getting paid, and her subsequent lying about it under direct questioning from her superior. However, Plaintiff presented no evidence regarding Ms. Walley's cursing incident so as to establish the "comparable seriousness" of conduct on which the dissent relies. It is the discrimination plaintiff's burden to establish that the other employee's acts were of "comparable seriousness" to his or her own infraction. *Lanear v. Safeway, supra,* 843 F.2d at 301. Plaintiff here has not met that burden.

Moreover, even if the majority were constrained to find sufficient record evidence that Ms. Walley's cursing at her team leader was, as the dissent suggests, of "comparable seriousness" to Ms. Mitchell's concealment of records and lying, the dissent does not address the fact that Plaintiff simply *produced no evidence* to establish that she and Ms. Walley were otherwise "similarly situated in all respects". It is undisputed that Plaintiff and Ms. Walley were employed in different capacities—Ms. Walley was a file clerk while Plaintiff was an accounts examiner. There is *no evidence of record* to establish that such different positions, or the duties and responsibilities required of holders of these jobs, are sufficiently similar so as to render them "comparable" positions. In determining that Ms. Walley's and Ms. Mitchell's positions were comparable, the dissent assumes that a file clerk and an accounts examiner are simply "specialized secretarial positions", and thus concludes that the positions are similar because they represent "jobs at the same level in occupational hierarchy". Based on that as-

It is now quite well-established that, in order to withstand a motion for summary judgment, the party opposing the motion must present "affirmative evidence" to support his/her position; a mere "scintilla of evidence" is insufficient. *Anderson v. Liberty Lobby, supra,* 106 S.Ct. at 2510, 2514; *Street v. J.C. Bradford & Co., supra,* 886 F.2d at 1479.

Because Plaintiff failed to produce sufficient affirmative evidence to establish that the non-minority employees with whom she compares her treatment were "similarly situated in all respects", or that their conduct was of "comparable seriousness" to the conduct for which she was discharged, no claim for discrimination can be based upon a comparison of Plaintiff's and their treatment.

### 3. *The Hospital Articulated a Legitimate Non–Discriminatory Reason for Plaintiff's Discharge.*

■ The District Court, however, went on to assume *arguendo* that Plaintiff had established a *prima facie* case and proceeded with the *Burdine* burden-shifting framework.[6] The Court found that the Hospital articulated a legitimate non-discriminatory reason for Plaintiff's discharge—misuse of Hospital property. As the District Court noted, the non-discriminatory nature of the Hospital's decision is bolstered by the Affidavit of Donald Currier, the Vice–President of the Hospital's Human Resources Department who was a member of the Review Board that voted to discharge Plaintiff for her actions. In his Affidavit, Currier stated that there was no one similar to Plaintiff who was caught misusing Hospital property who was not discharged and that the decision by the Board to terminate Plaintiff was made without any consideration of her race or age.

### 4. *Plaintiff Failed to Establish Pretext.*

Because the Hospital articulated a legitimate non-discriminatory reason for Plaintiff's termination, to withstand summary judgment, Plaintiff had to establish that the proffered reason was pretextual.

As the District Court found, Plaintiff has not met this burden.

All that Plaintiff offers to rebut the Hospital's articulated non-discriminatory reason is (1) her hearsay Affidavit that she had heard from some unidentified Hospital employees that at some unspecified point in time two white female employees supposedly had kept medicare and personal checks payable to the Hospital in their desks but were not discharged when this was discovered and (2) her denial that her actions on December 6–9, 1988 constituted "misuse of Hospital property".

■ First of all, with regard to Plaintiff's hearsay Affidavit, the District Court correctly found that the Affidavit was not a proper Rule 56(e) affidavit because it was not made on personal knowledge and did not set forth "facts" that would be admissible into evidence. Even if the Court were to consider the Affidavit, the statements

---

sumption—without any record evidence to support it—the dissent summarily determined that Walley and Mitchell were sufficiently similarly-situated to validate a comparison of their treatment.

Further, in finding sufficient comparability, the dissent refuses to require Plaintiff to establish that she and Ms. Walley "dealt with the same supervisor and were subject to the same standards". The dissent appears to assume that Ms. Walley and Ms. Mitchell were subject to the same standards because they were both hospital employees and the hospital had an "employee handbook". However, without evidence that these two employees reported to the same supervisor, there can be no showing that they were "subject to the same standards".

**6.** *Burdine* provides that:

First, the plaintiff has the burden of proving by the preponderance of the evidence a *prima facie* case of discrimination. Second, if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

450 U.S. at 252–53, 101 S.Ct. at 1093 (citations omitted).

contained therein are nothing more than rumors, conclusory allegations and subjective beliefs which are wholly insufficient evidence to establish a claim of discrimination as a matter of law. *See, O'Shea v. Detroit News,* 887 F.2d 683 (6th Cir.1989); *Simpson v. Midland–Ross Corp.,* 823 F.2d 937 (6th Cir.1987); *Chappell v. GTE Products Corp.,* 803 F.2d 261, 268 (6th Cir. 1986), *cert. denied,* 480 U.S. 919, 107 S.Ct. 1375, 94 L.Ed.2d 690 (1987); *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181 (11th Cir.1984); *Locke v. Commercial Union Insurance Co.,* 676 F.2d 205 (6th Cir.1982).

■ With respect to Plaintiff's contention that her denial that her actions on December 5–9, 1988 constituted a "misuse of hospital property" is sufficient to get to a jury, Plaintiff is mistaken. Courts have repeatedly held that the plaintiff's denial of the defendant's articulated legitimate reason without producing substantiation for the denial is insufficient for a race discrimination claim to withstand a motion for summary judgment. *Irvin v. Airco Carbide,* 837 F.2d 724 (6th Cir.1987); *Ridenour v. Lawson Co.,* 791 F.2d 52 (6th Cir.1986).

Thus, this Court agrees with the District Court—the record in this case reveals no genuine issue of material fact as to whether Plaintiff's conduct constituted a misuse of hospital property or as to whether Ms. Mitchell told her superiors that the missing forms were locked in her file cabinet.

## VI. CONCLUSION

In sum, as the District Court held,

The Hospital's motion for summary judgment was made and supported as required by Fed.R.Civ.P. 56. Mitchell was required to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). This she has not done. Mere allegations of discrimination are not sufficient. As such, summary judgment must be entered for the Hospital.

This Court finds no error in the District Court's holding. Therefore, the Judgment entered by the District Court on February 20, 1991 is hereby AFFIRMED.

NATHANIEL R. JONES, Circuit Judge, dissenting.

I take a substantially different view of the evidence in this case, and that view leads me to a result opposite from that of the majority. Accordingly, I respectfully dissent.

In her deposition, Mitchell testified at some length and in great detail about the fact that she and her co-workers agreed to play a practical joke on Wachsman, their team leader's supervisor. In furtherance of their agreement, Mitchell told her co-workers where the hospital's billing forms were located. When Wachsman later came looking for the forms, none of Mitchell's co-workers told him that the forms were under Mitchell's desk. Instead, Cindy Dawson merely told Mitchell the next day that Wachsman and another billing manager had come looking for the forms. Thus, all the accounts examiners clearly participated in the practical joke. Nonetheless, Mitchell was the only one singled out for punishment.

Mitchell was, concededly, the only one who actually lied to Wachsman. I agree with the majority that this factor distinguishes Mitchell. Specifically, I would find that she was more insubordinate than the others. Of course, the problem with the majority's analysis is that Mitchell was not discharged for insubordination.

With this factual background in mind, I turn to Mitchell's legal claims. I join the majority in holding that this case is more appropriately viewed under a four-factor test that replaces the replaced-by-a-non-protected-person element of *McDonnell Douglas/Burdine* with a comparable-non-protected-person-was-treated-better element. Mitchell was comparable to her co-workers but for the insubordination involved in lying to Wachsman. In this regard, I would find that Mitchell met the fourth element of the test by alleging that, in 1987, Bobbie Walley, an employee in charge of filing, cursed at her team leader. Walley was not fired. This is a clear example of how Tole-

do Hospital has dealt with insubordinate employees in the past. Walley's act is of a similar type—verbal insubordination—and of "comparable seriousness." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973).

In the textual discussion preceding footnote 5, the majority relies upon *Stotts v. Memphis Fire Department*, 858 F.2d 289 (6th Cir.1988) for the proposition that Walley is not similarly situated *in all respects* to Mitchell. *Stotts* involved an action filed under the terms of a 1980 consent decree issued in a separate class action against the Memphis Fire Department. *Id.* at 291. In this context, the court addressed the district court's finding of a pattern and practice of disparate treatment in the Department's discipline of its employees. *Id.* at 296. We repeatedly stressed, either by way of emphasis or quotation marks, that the relevant inquiry was whether the white employees were engaged in acts of comparable seriousness. *E.g., id.* at 296–98. Nowhere does that case discuss the meaning of "similarly situated." In fact, the *Stotts* court compared the conduct of Captain Tom Phillips, a white manager in the Department's administration, and Chief William Posey, a white, higher-ranking official, who both stole a promotional exam, with the conduct of the plaintiff, Jesse Jones, Jr., a fire fighter, who was disciplined for fighting. *Id.* at 291, 300. In concluding that Jones's case and Phillips' case lacked similarity and comparability, the court focused upon a comparison of the acts of stealing and fighting, without ever mentioning the fact that Phillips was an administrator while Jones was a fire fighter. *Id.* at 300. Thus, *Stotts* provides ample support for the proposition that the primary inquiry is into conduct rather than into precise occupational status.

Similarly, *Lanear v. Safeway Grocery*, 843 F.2d 298 (8th Cir.1988) does not support the position expressed in footnote 5. The actual quotation from *Lanear* is " 'similarly situated in all *relevant* respects.' " *Id.* at 301 (emphasis added) (quoting *Smith v. Monsanto*, 770 F.2d 719, 723 (8th Cir.1985), *cert. denied*, 475 U.S. 1050, 106 S.Ct. 1273, 89 L.Ed.2d 581 (1986)).

Furthermore, the *Lanear* court does not engage in any analysis supporting the fine distinction in occupational status suggested by footnote 5 of the majority's opinion in the instant case.

The district court in *Mazzella v. RCA Global Communications*, 642 F.Supp. 1531 (S.D.N.Y.1986), *aff'd*, 814 F.2d 653 (2d Cir.1987) attempted to provide some objective standards to measure the relevant aspects in determining whether a fellow employee is similarly situated:

> Employees are not "similarly situated" merely because their conduct might be analogized. Rather, in order to be similarly situated, other employees must have reported to the same supervisor as the plaintiff, must have been subject to the same standards governing performance evaluation and discipline, and must have engaged in conduct similar to the plaintiff's, without such differentiating or mitigating circumstances that would distinguish their conduct or the appropriate discipline for it.

*Id.* at 1547. Like *Lanear*, *Mazzella* is relevant here only for whatever persuasive effect it may have. *Mazzella*, however, is not persuasive, because after stating the facts and its rule of law, the district court engages in no analysis whatsoever. *Id.* Rather, it refers the reader back to the facts. From those facts, one may infer that Mazzella compared herself to dissimilar employees. *Id.* at 1546. Nonetheless, this inference falls far short of supporting the view that the fellow employees must be engaged in exactly the same occupation and report to the same supervisor. The *Mazzella* court's holding is based on many other factors, the bulk of which address the other employees' *conduct* and the absence of proof thereof. *Id.*

Applying these principles to the instant case, Walley and Mitchell held jobs at the same level in the occupational hierarchy—specialized secretarial positions. Whether they reported to different supervisors is irrelevant here, because decisions regarding employee discipline at Toledo Hospital were made by a five-member review board. Furthermore, both employees are judged

by the same standards—the hospital's employee handbook. Accordingly, although Walley and Mitchell are certainly not similarly situated in all respects, the majority cites no *relevant* respects in which they differ. In any event, the primary inquiry, once again, examines the similarity of the employee's conduct, not their occupational status.

Having found a prima facie case, I would turn to Toledo Hospital's proffered nondiscriminatory reason for Mitchell's discharge: "misuse" of hospital property. The burden then shifts back to Mitchell to present evidence that the hospital's reason was merely a pretext for discrimination. As the Supreme Court explained in *Burdine,* a plaintiff may succeed in proving intentional discrimination "either directly by persuading the court that a discriminatory reason more likely motivated the employer *or indirectly by showing that the employer's proffered explanation is unworthy of credence.*" *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981) (emphasis added).

The majority somehow finds it immanently logical that an employer, after providing employees with personal filing cabinets, would fire an employee for locking important forms in one of those cabinets. I find this remarkable on its face, but all the more remarkable in the instant case, because Mitchell was the only one with the insight to rescue the forms from the trash after Wachsman carelessly left them to be discarded by housekeeping. Keep in mind that the hospital is not claiming that it discharged Mitchell for her conduct in lying to Wachsman. Rather, it alleges that she was discharged only for misuse of hospital property or, in other words, solely for locking the forms away for safekeeping. I would suggest that such an explanation is unworthy of credence.

Other considerations also lead me to the conclusion that summary judgment was inappropriate in this case. Even in the "new era" of summary judgment, the party moving for summary judgment bears the burden of proving that no genuine issue of material fact exists. *Boyd v. Ford Motor Co.,* 948 F.2d 283, 285 (6th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1481, 117 L.Ed.2d 624 (1992). The district court granted summary judgment in the instant case based upon the affidavit of Donald Currier, Toledo Hospital's Vice–President of Human Resources. Currier represented therein that Mitchell was discharged for misuse of hospital property, a terminable offense pursuant to the employee handbook. The district court accepted this representation even though the employee handbook was not in evidence. I would hold that the hospital could not meet its burden by a mere allegation that misuse is a terminable offense; I would require that the hospital cite to a handbook in evidence or, at the very least, quote the relevant portion of the handbook.

A second problem arises from this court's attempt to review this case in the absence of the employee handbook's exact language. Assuming the handbook provision refers to "misuse" in only general terms, the jury would be entitled to decide whether the hospital was offering a genuine interpretation of that language or merely a pretext for discrimination. I would surmise that a jury would be likely to interpret a general "misuse" provision as being addressed to the problem of *misappropriation* of hospital property. In any event, I posit that no one, except apparently the majority of this Court, would conclude that a person could "misuse" what she did not in fact "use."

In sum, I would find that Mitchell responded sufficiently to Toledo Hospital's motion for summary judgment by alleging that the hospital's proffered nondiscriminatory reason is unworthy of credence.[1] Ac-

---

**1.** Mitchell also alleged specific evidence of disparate treatment involving "misuse," namely that two other employees, Karen Lind and Connie Kortgoede, kept personal and medicare checks payable to the hospital locked in their desk drawers, yet the hospital did not discharge either of them for misuse of hospital property. Her allegations, however, were not based upon personal knowledge, and her counsel did not preserve the matter for discovery by a Rule 56(f) motion. *See Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989).

cordingly, I would reverse the district court, because the record demonstrates a genuine issue of material fact as to whether Mitchell's conduct constituted misuse of hospital property.