Wendy KOMAC, Plaintiff,

v.

**GORDON FOOD SERVICE,**
**et al., Defendants.**

No. 1:95 CV 2314.

United States District Court,
N.D. Ohio,
Eastern Division.

May 6, 1998.

Blair Hodgman, Allen & Hodgman, Cleveland, OH, for Plaintiff.

John Stephen Kluznick, Sr., Weston, Hurd, Fallon, Paisley & Howley, Cleveland, OH, Susan B. Hoekema, William H. Fallon, Miller, Johnson, Snell & Cummiskey, Grand Rapids, MI, for Defendants.

## MEMORANDUM OF OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DISMISSING PLAINTIFF'S STATE LAW CLAIMS

WELLS, District Judge.

### I. Introduction

This case is before the Court on the motion for summary judgment filed February 7, 1997, by defendants Gordon Food Service, Inc. ("Gordon") and David Scott Appleby (docket no. 37). Plaintiff Wendy Komac filed a memorandum in opposition to defendants' motion for summary judgment on March 19, 1997 (docket no. 48), defendants filed a reply brief on April 2, 1997 (docket no. 61), and plaintiff filed a surreply brief on June 24, 1997 (docket no. 70).

On November 7, 1997, this case was referred to United States Magistrate Judge Patricia A. Hemann for a report and recommended decision on the motion for summary judgment. Magistrate Judge Hemann filed her report and recommended decision on January 28, 1998 ("R & R"), recommending that summary judgment be granted on Komac's federal claim and that Komac's claims under state law be dismissed without prejudice. Komac filed objections to Magistrate Judge Hemann's recommendation on Febru-

ary 13, 1998, and each side has filed an additional brief. For the reasons which follow, defendants' motion for summary judgment will be granted on Komac's federal claims and Komac's claims under state law will be dismissed without prejudice.

## II. Procedural History and Factual Background

Magistrate Judge Hemann sets forth the procedural history and factual background as follows:

Plaintiff, Wendy Komac ("Komac"), brings this lawsuit pursuant to Title VII asserting that her former employer, Gordon Food Service, Inc. ("Gordon"), discriminated against her on the basis of her sex. She also asserts state law claims under the Ohio discrimination statutes, Ohio Revised Code §§ 4112.02(A) and 4112.99, and for defamation, breach of contract, and fraud. Gordon, a wholesale food distributor, is a Michigan corporation with a branch office in Cleveland, Ohio. David Appleby ("Appleby"), the Northeast Ohio Branch Manager for Gordon, is a co-defendant on the defamation claim.

Komac began her employment as a sales representative/trainee at Gordon on February 4, 1991. She was told that her training period would last six months and that she would be paid a weekly salary of $480.00. In August 1991 Komac was assigned to her own sales route. She understood that as she earned commissions on her sales, her salary would decrease in the amount of her commissions so that eventually she would be working entirely on commission. By the Fall of 1992, Komac's salary terminated, and she was earning only the commissions on her sales.

In April 1993 Komac began a twelve week maternity leave. During her leave it was determined that she would be assigned to a new sales route when she returned to work. Komac was agreeable to the change. The new route was in Akron, Ohio, and Komac was given a salary of $600.00 a week as she began to develop her customer base. She also was permitted to retain two of her former customers.

Komac participated in sales contests sponsored by Gordon's marketing department. There was no general set of rules regarding the conduct of the contests; each contest had its own rules. The prizes included vacations, airline tickets, mountain bikes and cash.

In 1994 Gordon sponsored a contest called "Winner's Circle" which rewarded sales representatives for generating new customers. In March or April 1994 Gordon's Ohio Regional Manager, Thomas G. Vollmer ("Vollmer"), received an unsigned letter alleging that Komac was engaging in unethical business practices. The letter alleged that Komac was falsely representing that sales had been made to "new" customers in order to gain points in the Winners Circle competition. Vollmer met with Komac to discuss the allegation. At that time Komac told Vollmer that other employees routinely violated contest rules. Subsequently, Komac was disqualified from the Winner's Circle competition.

In April 1994, within a few days of Vollmer's meeting with Komac and during a branch meeting held at Wagner's restaurant, Vollmer addressed the subject of employee manipulation of sales contests. Appleby testified that Vollmer told the employees

there will be absolutely no tolerance for any type of maneuvering of sales or product under customer numbers, whether it was personally bought, whether it was shipped to the wrong customer, any manipulation of sales, particularly as it related to contests or personal gain, if any of that was to go on, that would be grounds for termination.

In February 1995 Gordon sponsored a sales contest called "How to Win the West" which rewarded sales of Tyson beef, pork and poultry products. At the end of the contest Vollmer was contacted by a Gordon employee who questioned Komac's sales reports. Vollmer generated several internal reports regarding Komac's sales which raised concerns for him. Vollmer met with Komac who, he testified, admitted that she had reported product normally purchased by one of her long-term cus-

tomers, Whitey's, as purchased by two other customers, although the product was delivered to Whitey's. Following the meeting, Vollmer made the decision to terminate Komac.

On July 3, 1995 Komac filed a charge of gender discrimination with the Equal Employment Opportunity Commission (the "EEOC"). On October 4, 1995 the EEOC issued a right to sue letter. Komac filed her lawsuit in this court on October 30, 1995.

Komac asserts five claims: 1) Gordon violated Title VII by treating Komac less favorably than male employees in regard to the terms and conditions of her employment and by terminating her for conduct engaged in by male employees who were never disciplined; 2) Gordon violated Ohio Revised Code §§ 4112.02(A) and 4112.99 by the same sex-based employment discrimination; 3) Defendant Appleby broadcast defamatory statements about her over Gordon's voice mail and Gordon employees further defamed her by publishing the statements to Gordon customers; 4) Gordon breached a contract with Komac by underpaying her for commissions on her sales; and 5) Gordon, through its fraudulent misrepresentations, denied Komac commissions on her sales. Defendants move for summary judgment on all five claims.

(R & R at 1–5) (citations omitted).

### III. Law and Analysis

Summary judgment is appropriate if the evidence in the record, viewed in favor of the nonmoving party, shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "When a motion for summary judgment is made and supported

as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *See generally Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996) (discussing summary judgment standards).

In her report and recommended decision to which Komac objects, Magistrate Judge Hemann found: (1) "Komac's claim of sex-based wage discrimination is barred because the alleged discriminatory acts occurred outside the applicable 180 day statute of limitations for Title VII causes of action" (R & R at 9); (2) Komac has not established a *prima facie* case of discriminatory discipline, *id.* at 15; and (3) Komac's pendent state law claims should be dismissed without prejudice. *Id.*

Under Fed.R.Civ.P. 72(b) and 28 U.S.C. § 636(b)(1)(C), the Court reviews *de novo* the portion of the Magistrate Judge's report and recommended decision to which specific objection was made.

### A. Wage Discrimination

#### 1. Statute of Limitations

Magistrate Judge Hemann's first recommendation is that Komac's claim of wage discrimination be barred by the 180–day statute of limitations under 42 U.S.C. § 2000e–5(e).[1] Komac argues the applicable statute of limitations is 300 days and that she has alleged a "continuous violation" of Title VII, beginning with her starting salary in 1991.[2]

42 U.S.C. § 2000e–5(e)(1) states in part:

---

1. Defendants make this argument in footnote 1 of their motion for summary judgment, without any further discussion or documentation. Footnote 1 states in its entirety:

 Plaintiff first filed a discrimination charge with EEOC on July 3, 1995 (Complaint ¶ 7). Under Title VII, a charged [sic] must be filed within 180 days of the action complained of. 42 U.S.C. § 2000e–5(e). As a result, actions here before January 1995 are not a proper subject of a Title

VII claim. These include the determination of plaintiff's compensation through 1994, and her disqualification from the Winner's Circle contest in 1994. *See Gallagher v. Croghan Colonial Bank*, 89 F.3d 275, 278 (6th Cir.1996); *Hawley v. Dresser Indus., Inc.*, 737 F.Supp. 445, 453 (S.D.Ohio 1990).
(Def. Mot. at 12–13 n. 1.)

2. Komac also points out that the statute of limitations under Ohio Rev.Code Ann. § 4112.99 is six

A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred ..., except in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred....

Magistrate Judge Hemann determined there was no evidence Komac had initiated proceedings with a state or local agency. Komac argues a filing with the EEOC automatically results in a filing with the Ohio Civil Rights Commission ("OCRC"), making the 300–day statute of limitations applicable. To support her argument, Komac relies on the worksharing agreement between the EEOC and the OCRC which appoints each as the other's agent for receiving and drafting complaints. Komac's argument has merit.

"In order to bring a suit under Title VII in a 'deferral state,' the aggrieved party must have filed a charge of discrimination with the EEOC within 300 days of the alleged discriminatory act. Ohio is such a deferral state." *EEOC v. Penton Indus. Publ'g Co.*, 851 F.2d 835, 837 n. 5 (6th Cir.1988) (citing *Hall v. Ledex, Inc.*, 669 F.2d 397, 398 (6th Cir.1982)). *See also Brown v. Crowe*, 963 F.2d 895, 898 (6th Cir.1992) (holding in Title VII case that where worksharing agreement provides that EEOC and state agency are each other's agent, a filing with one agency automatically results in filing with the other). Therefore, Komac's Title VII claims are subject to a 300–day statute of limitations under 42 U.S.C. § 2000e–5(e)(1).[3] Accordingly, because her EEOC charge was filed on July 3, 1995, Komac may assert claims dating back

as early as September 8, 1994, unless she establishes a "continuing violation" under Title VII. If she establishes a continuing violation, Komac may assert claims outside of the limitations period.

■ Komac may establish a continuing violation by producing evidence of a violation within the limitations period, that is after September 8, 1994, and by showing that such violation "is indicative of a pattern of similar discriminatory acts continuing from the period prior to the limitations period." *Gallagher v. Croghan Colonial Bank*, 89 F.3d 275, 278 (6th Cir.1996) (citing *Dixon v. Anderson*, 928 F.2d 212, 216 (6th Cir.1991); *Held v. Gulf Oil Co.*, 684 F.2d 427, 430 (6th Cir. 1982)).

The *de novo* review of Komac's wage discrimination claim set forth in the next section of this opinion demonstrates that Komac has not established a continuing violation of Title VII. She has not produced evidence of a violation within the limitations period, the first prerequisite to establishing a continuing violation under *Gallagher*. Therefore, Komac may only assert wage discrimination claims dating back as early as September 8, 1994.

### 2. Merits

■ Komac may establish a *prima facie* case of disparate treatment under Title VII by either offering direct evidence of intentional discrimination, *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241 (6th Cir.1995), or by offering evidence she is a member of a protected class (female) and "was treated differently than similarly-situated [male] employees." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir.1992).

■ If Komac establishes a *prima facie* case of discrimination, the burden then shifts to defendants " 'to articulate some legitimate nondiscriminatory reason' " for their decision although the burden of proof remains at all

---

years, relying on *Cosgrove v. Williamsburg of Cincinnati Mgt. Co.*, 70 Ohio St.3d 281, 638 N.E.2d 991, syllabus (1994).

**3.** This conclusion is consistent with the EEOC's own regulations, which provide that a charge is timely if filed within 300 days of the alleged

violation in a "deferral state." 29 C.F.R. § 1601.13(a)(4)(ii)(A). This interpretation "need only be reasonable to be entitled to deference." *EEOC v. Commercial Office Prods. Co.*, 486 U.S. 107, 108 S.Ct. 1666, 100 L.Ed.2d 96 (1988).

times with Komac. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). Finally, the burden returns to Komac to show that defendants' explanation for their employment decision is pretext. *Id.* "[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false and that discrimination was the real reason." *Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 804–05 (6th Cir.1994) (citing *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).

### a. Direct Evidence

██ In her deposition, Komac testified that while negotiating her salary on her return from maternity leave in July 1993, Appleby proposed to pay her only $450 per week. (Komac Dep. at 188.) Komac testified that when she protested that male employees were earning more, Appleby responded that the male employees "have a wife and three kids at home." *Id.* Komac argues this statement constitutes direct evidence of intentional discrimination. (Pl. Br. in Opp. at 4.)

Komac's argument lacks merit. Komac does not testify that Appleby made any other comments of this nature and admits that the comment was made in a context which made it ambiguous.[4] (Komac Dep. at 249–50.) "An isolated and ambiguous remark of this nature is not sufficient to create a genuine issue of material fact so as to preclude summary judgment in favor of the defendant." *Wheelwright v. Clairol, Inc.,* 770 F.Supp. 396, 401 (S.D.Ohio 1991) (considering remark made by defendant's regional manager to the plaintiff's wife that plaintiff's employment would not last longer than five years in age discrimination case). *See also Gagne v. Northwestern Nat'l Ins. Co.,* 881 F.2d 309, 314 (6th Cir.1989) (single remark by plaintiff's immediate supervisor that he "needed

younger blood" held insufficient to defeat defendant's motion for summary judgment on plaintiff's age discrimination claim).

Further, the cases cited by the plaintiff, *Portis v. First Nat'l Bank of New Albany,* 34 F.3d 325, 328–29 (5th Cir.1994), and *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1248 (6th Cir.1995), are not factually analogous to this case. Accordingly, Komac has not presented sufficient direct evidence of intentional wage discrimination to establish a *prima facie* case outside of the *McDonnell Douglas* evidentiary framework.

### b. Indirect Evidence

Within the *McDonnell Douglas* evidentiary framework, Komac has presented evidence regarding (1) her starting salary as a trainee in February 1991; (2) the quarterly salary adjustment or "click down" which resulted in a salary-commission total compensation blend; and (3) her salary on return from maternity leave in July 1993 until her termination in February 1995.

██ With respect to her *prima facie* case, there is no dispute that Komac is a member of a protected class. The dispute focuses on whether the evidence she has presented shows she was treated differently than similarly-situated male employees with respect to wages. "[T]o be deemed 'similarly-situated', the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell,* 964 F.2d at 583 (citations omitted).

### i. Starting Salary

██ When Komac was hired as a trainee in February 1991, her salary was $480 per week. Komac points to starting salaries of four male employees who were hired as trainees in the one-year period prior to her

---

4. Komac testified that she responded to Appleby's comment by saying, "I have a husband and two kids at home," to which Appleby responded "that's not the Gordon's way, we don't pay big salaries like that." (Komac Dep. at 188.) Komac admits the overall meaning of Appleby's comments may have referred to Gordon's policy of not paying high salaries to sales representatives in general. *Id.* at 250.

employment and one male employee who was hired five months after she began working at Gordon; the male employees earned between $500 and $800 per week. Defendants argue Komac did not have food industry experience comparable to the male employees and was, therefore, not "similarly-situated." Defendants also argue that after Komac's hire, male trainees were hired at starting salaries lower than Komac's.

The evidence presented demonstrates a genuine issue of material fact with respect to Komac's claim of discriminatory starting salary. Because this claim is based on events occurring outside of the statute of limitations, however, and because Komac has not established a continuing violation of Title VII, defendants' motion for summary judgment on Komac's starting salary discrimination claim is granted.

### ii. "Click Down" Process

■ With respect to the "click down" process claim, Komac presented evidence which demonstrates that of the trainees who started within one year of her hire and who remained with the company as of November 7, 1992, she earned the lowest salary at $25 per week, while her colleagues earned between $150 and $505.

It is not disputed that all employees were paid commissions at the same rate. It is also not disputed that when a trainee is placed on a sales route, an agreement is made between the employee and the branch manager which sets the quarterly reduction in the weekly salary amount. (Vollmer Dep. at 191–92.) Each employee has a different set amount for his or her quarterly salary adjustment based on the assigned sales route and the route's commission potential. *Id.*

The evidence presented by Komac conclusively demonstrates that her weekly salary was reduced at a higher rate, as of November 7, 1992, than her similarly-situated male colleagues. Nevertheless, Komac has not demonstrated a *prima facie* case of wage discrimination based on this evidence. Komac has not presented any evidence she "was treated differently than similarly-situated [male] employees." *Mitchell*, 964 F.2d at

583. Nor does she present evidence to dispute that her weekly salary was reduced by an amount based on the nature of her specific assigned sales route and its commission potential. The evidence of Komac's high total compensation compared to her co-employees confirms the conclusion that she was not treated differently than similarly-situated male employees with respect to the "click down" process. *See* Def't Ex. B.

Even if Komac establishes a *prima facie* case of discrimination, she has not demonstrated any evidence that the legitimate nondiscriminatory reason for her larger salary adjustment amount—that her sales route was more favorable in terms of the potential for commissions [5]—constitutes pretext. There is no evidence that "the reason was false and that discrimination was the real reason." *Pierce*, 40 F.3d at 804–05. The cases cited by Komac, *Bence v. Detroit Health Corp.*, 712 F.2d 1024 (6th Cir.1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1282, 79 L.Ed.2d 685 (1984), and *Hodgson v. American Bank of Commerce*, 447 F.2d 416 (5th Cir.1971), do not apply.

Therefore, defendants' motion for summary judgment on Komac's wage discrimination claim as of November 7, 1992, is granted.

### iii. July 1993–February 1995 Salary

■ Komac's third claim is that her salary on return from maternity leave in July 1993 until her termination in February 1995 was discriminatory. Komac compares her salary to one of her co-employees, Mike Sprenger. Defendants argue that Sprenger was not similarly-situated to Komac because he had more seniority, held a different position, did not receive commissions, and was not assigned to a regular sales route. Instead, he was responsible for opening new accounts and transferring the accounts to other salespeople. When Komac returned from maternity leave in July 1993, she was assigned a new territory in Akron, Ohio, where she serviced two existing customers and was responsible for opening new accounts for herself.

---

**5.** *See* Appleby Depo. at 60–67.

It is not disputed that Komac's relevant base salary on July 4, 1993, was $31,200 and her total compensation for 1994 was $54,826; Sprenger's relevant base salary on December 19, 1992, was $48,438 and his total compensation for 1994 was $67,810.

Komac does not present evidence to support her argument that Mike Sprenger was a similarly-situated employee. It is not disputed that he had more seniority than Komac and did not earn commissions. (Appleby Dep. at 227–29; Komac Dep. at 193; Sprenger Dep. at 174) Additionally, he was responsible for different tasks within Gordon. Komac has not presented evidence suggesting otherwise. *Id.* Therefore, Komac has not established a *prima facie* case of wage discrimination between her return from maternity leave in July 1995 and her termination in February 1995. Accordingly, defendants' motion for summary judgment on this claim is granted.

### B. Discriminatory Discipline

Magistrate Judge Hemann concluded Komac did not establish a *prima facie* case of discriminatory discipline. (R & R at 15.) The report and recommended decision concludes:

> Komac has failed to produce evidence of a similarly situated male salesperson who was treated differently by Gordon. Komac was terminated in 1995 for alleged misconduct regarding a sales contest after Vollmer had informed his salespersons that any manipulation of sales would be grounds for termination. She has not identified any male salesperson who manipulated sales after Vollmer's April 1994 speech at Wagner's Restaurant and whose deceptive action was known to Vollmer.

(R & R at 15.) Komac objects to this conclusion and it will be reviewed *de novo*.

 To establish a *prima facie* case of discriminatory discipline, Komac must show "(1) she was a member of a protected class; (2) she was discharged; (3) she was qualified for the position;" and (4) "for the same or similar conduct [she] was treated differently than similarly-situated [male] employees."

*Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582–83 (6th Cir.1992). The evidentiary framework then follows the outline set fort above for wage discrimination. This case focuses on whether Komac has presented evidence which shows she was treated differently than a similarly-situated male employee. There is no dispute with respect to the other elements of the *prima facie* case.

The standard for "similarly-situated," as set forth above, applies. "[T]o be deemed 'similarly-situated', the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employees treatment of them for it." *Mitchell,* 964 F.2d at 583 (citations omitted). That is, an individual must be "similarly-situated *in all respects.*" *Id.* (emphasis in original) (citation omitted).

Komac makes the following specific objections with respect to her discriminatory discipline claim: (1) the Magistrate Judge erred in not concluding that the evidence establishes Komac was treated differently than similarly-situated employees Mike Sprenger, Tom Ball and David Veldink because (a) their "proven misconduct" was of comparable seriousness; (b) all employees were subject to the same supervision; (c) all employees' were subject to the same standards; and (d) the timing of the male employees alleged misconduct does not constitute a mitigating factor; (2) there is no evidence Komac engaged in manipulation of the February 1995 contest; and (3) the Magistrate Judge erred in failing to consider or make findings regarding five items of evidence which constitute "additional circumstantial evidence of discrimination sufficient to require submission of the case to the jury."[6] (Pl. Obj. at 7–13.)

On her discriminatory discipline claim, Komac does not establish a genuine issue of material fact with respect to the existence of a similarly-situated employee. Komac has presented no evidence that Sprenger, Ball, or

---

**6.** Komac's claim of discriminatory discipline with respect to her disqualification from the Win-

ners' Circle contest in 1994 is barred by the 300-day statute of limitations.

Veldink was similarly-situated. Komac has presented no evidence that her supervising entity—Vollmer and Appleby—was aware of comparable misconduct by another employee following Vollmer's warning to all of the employees, in April 1994, that cheating on a contest would be grounds for termination. The only employee Komac testified had engaged in alleged cheating on a contest following the April 1994 "warning" was Ball. (Komac Dep. at 298, 307.) Komac did not testify that either Vollmer or Appleby was aware of Ball's alleged cheating.[7] Therefore, because Komac has not presented evidence of a similarly-situated male employee who was not terminated for comparable misconduct, she has not established a *prima facie* case of discriminatory discipline.

Komac's allegation that she did not engage in manipulation of the "How to Win the West" contest in February 1995, prior to her termination, is contradicted by her deposition testimony. Komac testified that, with the purpose of obtaining an advantage in the contest, she invoiced chicken wings and chili through Whitey's Food Systems and JMJ Catering, two entities owned by the same owner as Whitey's Booze and Burgers, another of her customers which frequently purchased such food items. (Komac Dep. At 375–76.) Komac testified in deposition that she had no knowledge of another employee using multiple customer accounts to gain a contest advantage following Vollmer's April 1994 warning. (Komac Dep. at 335.)

Komac objects to the Magistrate Judge's alleged failure to consider the following pieces of evidence:

1. The usual interview process for hiring a new sales representative consists of interviews with Appleby, Vollmer, and David Dow, the national sales manager, in Grand Rapids. However, Wendy Komac did not interview with David Dow. Before she met him for the first time, she was warned by Appleby not to tell Dow she had an infant child; Appleby said that he and Vollmer had not told Dow that she had a child when they hired her. (Komac Dep. at 64–65.)

2. At the time Wendy Komac was hired and for the next fourteen months she was the only female employed in the Cleveland branch in any capacity. (Komac Aff. ¶ 7.) Today, two sales representatives out of twenty-two are women; Vollmer cannot explain this disparity. (Vollmer Dep. at 16.)

3. The last female sales representative before Wendy Komac was a woman named Bonita Bush. Appleby told Wendy Komac that at one point he had decided never to hire another woman, because Bonita Bush cried at meetings. (Komac Dep. at 159.)

4. In 1992 Appleby hired a second female, Brenda Niederst. She remained a sales trainee while five males hired after her were placed on routes. When she was finally put on a route, she was told to hand out "sample hamburger patties down Brook Park Road in a short skirt." Brenda finally quit in disgust. At her exit interview, when she reported these kinds of problems to Vollmer, he took no notes and showed no interest. (Niederst Dep. at 49–51, 91–92.)

5. On more than one occasion Appleby had Wendy Komac play secretary and type letters for him; he never asked males to do this. (Appleby Dep. at 521.)

6. Wendy Komac and Carl Soldano both won pacesetter of the year awards for 1992. At an awards ceremony in June, 1993, Soldano was introduced with an elaborate account of his "great year" as a pacesetter; Wendy Komac, who had just had her second child, was then introduced simply as a "new mom" without mention of her award. (Komac Dep. at 405–06.)

(Pl. Obj. at 13–14) (emphasis omitted). This evidence, even if true, does not establish a *prima facie* case of discriminatory discipline. This evidence does not constitute direct evidence of intentional discrimination. Further,

---

7. "[I]f an employer is unaware that a [male] employee is in violation of company policy, the absence of discipline does not demonstrate a more lenient policy." *Chescheir v. Liberty Mut. Ins. Co.*, 713 F.2d 1142, 1148 (5th Cir.1983).

The fact that Vollmer and Appleby learned of Sprenger's misconduct at Sprenger's deposition in this case and did not terminate him as a result is not relevant, as Komac claims.

this evidence does not establish a *prima facie* case under the *McDonnell Douglas* evidentiary framework because there is no showing a similarly-situated male employee was treated differently than Komac with respect to discipline. Because Komac has not established a *prima facie* case of discriminatory discipline, defendants' motion for summary judgment on that claim is granted.

### C. State Law Claims

Magistrate Judge Hemann recommended dismissal of Komac's state law claims if summary judgment were granted on her federal claims. Under 28 U.S.C. § 1367(c), the Court may decline to exercise supplemental jurisdiction if all original jurisdiction claims have been dismissed. Because Komac's federal claims have been dismissed, the Court will decline to exercise jurisdiction over her remaining state law claims. Therefore, Komac's state law claims are dismissed, without prejudice.

### IV. Conclusion

For the foregoing reasons, Magistrate Judge Hemann's recommendation is adopted. Accordingly, judgment will be entered in favor of defendants Gordon Food Service, Inc. and David Scott Appleby and against plaintiff Wendy Komac on plaintiff's federal claims and plaintiff's state law claims will be dismissed.

### JUDGMENT ENTRY

The Court, having previously entered its memorandum of opinion and order granting defendants Gordon Food Service, Inc. and David Scott Appleby's motion for summary judgment on plaintiff Wendy Komac's federal claims and dismissing plaintiff's state law claims, enters judgment in favor of defendants on plaintiff's federal claims and dismisses plaintiff's state law claims. Plaintiff shall pay costs.