**Luann EPERESI, Plaintiff,**

v.

**ENVIROTEST SYSTEMS CORP., Defendant.**

**No. 1:97–CV–1403.**

United States District Court,
N.D. Ohio,
Eastern Division.

March 23, 1998.

under Chapter 4112 of the Ohio Revised Code; (7) racial discrimination under Chapter 4112 of the Ohio Revised Code; (8) retaliatory discharge under Chapter 4112 of the Ohio Revised Code; and (9) wrongful discharge in violation of Ohio public policy.

During a status conference held on December 16, 1997, before U.S. District Judge Nugent, plaintiff advised the Court that she would not be pursuing her claims for wage discrimination arising under the Equal Pay Act and Title VII (Counts I, II and VI).[1] For this reason, the Court limits its review to Plaintiff Eperesi's claims for retaliation, racial discrimination and violation of public policy.

Mark P. Herron, Cleveland, OH, for Luann Eperesi, plaintiff.

Paul Leslie Jackson, Robert E. Blackham, Michelle Pierce–Gealy, Roetzel & Andress, Akron, OH, for Envirotest Systems Corp., defendant.

## OPINION AND ORDER

GWIN, District Judge.

On March 11, 1998, Defendant Envirotest Systems Corp. ("Envirotest") filed a motion for summary judgment against Plaintiff Luann Eperesi [Doc. 29]. For the reasons that follow, the defendant's motion is granted.

### I

Plaintiff Eperesi filed this action against Defendant Envirotest on May 19, 1997. Eperesi sues Envirotest claiming that her termination from defendant's employment was motivated by discriminatory reasons. Plaintiff Eperesi makes claim for: (1) violation of the Equal Pay Act; (2) gender discrimination because of unequal pay under Title VII; (3) racial discrimination under Title VII; (4) retaliatory discharge under Title VII; (5) retaliatory discharge under the Equal Pay and Fair Labor Standards Acts; (6) gender discrimination based upon alleged unequal pay

### II

Defendant Envirotest provides vehicle emissions testing for the State of Ohio through a program know as "E–Check." Employees that work for Envirotest go through training and are thereafter placed at stations located throughout the State. Employees are paid according to a predetermined schedule. Typically, an employee will receive pay step increases based upon the number of hours worked and whether their performance is satisfactory.

On October 23, 1995, Defendant hired Plaintiff Eperesi as a Lane Inspector. Plaintiff went through training and was assigned to defendant's Euclid, Ohio facility. Plaintiff's initial rate of pay was $5.50 per hour. On January 20, 1996, Plaintiff was promoted from the position of Lane Inspector to the position of Lead Lane Inspector. She received a pay increase of .50 cents per hour, making her rate of pay $6.00 per hour. On July 25, 1996, Plaintiff's pay was again increased to $6.25 per hour for completing six months of service with the company.

Sometime in the late Summer of 1996, Plaintiff learned that a male co-worker, also working as a Lead Lane Inspector, was making $6.40 per hour compared to her $6.25 per hour. This employee was hired as a Lane Inspector with Plaintiff Eperesi in October of 1995, yet was promoted to Lead Lane In-

---

1. *See* Minutes of Proceedings dated December 16, 1997, entered in Case No. 97–CV–1403 by the Hon. Donald C. Nugent. (Exhibit 1 of plaintiff's memorandum opposing summary judgment).

spector sometime after Eperesi was promoted in July 1996. Plaintiff made complaints to management about what she perceived to be unequal pay. In late September 1996, Plaintiff filed a charge with the EEOC.

Shortly thereafter, on October 30, 1996, Plaintiff executed two public relations tests ("PR tests") at the Euclid facility.[2] These tests are routinely performed by management level personnel and must be authorized. Plaintiff admits that she performed these PR tests, but claims that she had discretion to do so.[3] Plaintiff Eperesi's managers deny that such discretion was ever given and they state that the tests were unauthorized.[4] On October 30, 1996, Defendant Envirotest terminated Eperesi for performing the unauthorized tests.[5]

### III

Defendant says it is entitled to summary judgment for the following reasons: (1) plaintiff's claims of racial discrimination under Title VI (Count III) and Ohio law (Count VII) fail because plaintiff cannot show that Defendant Envirotest had knowledge of, or lacked tolerance for, plaintiff's interracial relationship with another company employee; (2) plaintiff's claims for retaliatory discharge under Title VII, the Equal Pay and Fair Labor Standards Acts, and state law (Counts IV, V, and VIII, respectively) fail because plaintiff cannot show any causal connection between her inquiries about her pay and

Defendant Envirotest's election to terminate her; and (3) plaintiff's claim that her termination violated Ohio public policy (Count IX) fails because she cannot show that her civil rights were violated.

### IV

The procedure for granting summary judgment is found in Fed.R.Civ.P. 56(c), which provides in part that:

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment is not proper if there is a material dispute over the facts, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,*

---

**2.** A public relations test is a complimentary emissions test performed by management of a station when a customer has had a problem in the past with the testing procedures. There are a number of procedures that must be followed when such tests are given. Defendant contends that Eperesi failed to comply with these procedures.

**3.** Plaintiff did not inform anyone at the Euclid facility that she performed the public relations tests until it was discovered by Mary Weston, the station manager.

**4.** Both Mary Weston and Nancy Williams, Assistant Manager at the time, both state that they never gave Plaintiff Eperesi authority to perform public relations tests absent their approval. Management maintains that standard company policy prohibits Lead Lane Inspectors from performing public relations tests, and further limits performing the tests to only those persons with authorization from management.

**5.** Plaintiff Eperesi was terminated by letter dated November 7, 1996, after attempts by Envirotest to meet with her to discuss the matter. Internal correspondence dated November 6, 1996, from Mr. Norm McLeod to Ms. Lee Scott shows that attempts were made to contact Plaintiff Eperesi to discuss her violation of established lane operation procedures. The memorandum indicates that Eperesi did not make herself available to discuss the matter. Therein, Mr. McLeod recommends that Eperesi's termination be issued "via U.S. Mail." Plaintiff's memorandum in opposition, Exhibit 6.

After her termination, Plaintiff Eperesi applied to the Ohio Bureau of Employment Services for unemployment benefits. Her application was denied. Plaintiff appealed and her appeal was turned down by the Board of Review.

477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). See also *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The Sixth Circuit has recognized that *Liberty Lobby, Celotex* and *Matsushita* effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir.1989). In responding to a proper motion for summary judgment, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Street*, 886 F.2d at 1479 (quoting *Liberty Lobby*, 477 U.S. at 257). The nonmoving party must introduce more than a scintilla of evidence to overcome the summary judgment motion. *Street*, 886 F.2d at 1479.

The Sixth Circuit emphasized the showing required to defeat summary judgment, in *Mitchell v. Toledo Hosp.*, 964 F.2d 577 (6th Cir.1992). There, the Court stated:

"The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of evidence that the plaintiff is entitled to a verdict...." The "mere possibility" of a factual dispute is not enough. Rather, in order to defeat summary judgment a plaintiff "must come forward with more persuasive evidence to support [his or her] claim

6. It is also not sufficient for the nonmoving party merely to "show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street*, 886 F.2d at 1479. That is, the nonmoving party has an affirmative duty to direct the court's attention to specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.

7. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."

than would otherwise be necessary." Where the defendant demonstrates that after a reasonable period of discovery the plaintiff is unable to produce sufficient evidence beyond the bare allegations of the complaint to support an essential element of his or her case, summary judgment should be granted.

*Id.* at 581–81 (citations omitted).[6] Thus, a judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue a proper jury question.[7]

## V

Defendant first says it is entitled to summary judgment because Plaintiff Eperesi fails to establish a *prima facie* case of racial discrimination under Title VI (Count III) and Ohio law (Count VII). Envirotest argues that plaintiff gives no evidence to show that Defendant Envirotest had knowledge of, or lacked tolerance for, plaintiff's interracial relationship with another company employee. The defendant further argues that Eperesi fails to show that her interracial relationship was a motivating factor considered in terminating Plaintiff Eperesi.

Title VII prohibits racially discriminatory employment practices. Under 42 U.S.C. § 2000e–2(a)(1), it is unlawful for an employer "to fail to refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to ... compensation, terms, conditions, or privileges of employment, because of such individual's race...."[8] The statute has been held to prohibit discrimination against white as well

*60 Ivy Street*, 822 F.2d at 1436 (quoting *Anderson*, 477 U.S. at 249).

8. Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e–2(a)(1) provides:

It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin....

*See also Parr v. Woodmen*, supra at 891; *Lester v. Twitchell*, 894 F.Supp. 1511, 1514 (M.D.Ala. 1995).

as black persons. *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976).

The protections of Title VII have also been extended to claims of discrimination or reprisal against an employee wherein the employee is involved in an interracial relationship. *Parr v. Woodmen of the World Ins. Co.*, 791 F.2d 888, 891 (11th Cir.1986). In *Parr,* the Eleventh Circuit Court of Appeals followed the lead of other circuits that recognize a cognizable claim for discrimination based on an interracial relationship under § 1983 and Title VII. See *Fiedler v. Marumsco Christian School,* 631 F.2d 1144 (4th Cir.1980) (white female student expelled for dating a black male student denied the right to contract because of racial association in violation of § 1981); *DeMatteis v. Eastman Kodak Company,* 511 F.2d 306 (2d Cir.1975) (finding that a white man forced into early retirement because he sold his house to a black person was able to state a claim pursuant to § 1981).

Employment discrimination because of race is likewise forbidden under Ohio law. Pursuant to Ohio Revised Code § 4112.02(A), it is an unlawful discriminatory practice in the state for "any employer, because of ... sex ... to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." See also *Beaven v. Commonwealth of Kentucky,* 783 F.2d 672, 675 (6th Cir.1986); *In re Brantley,* 34 Ohio App.3d 320, 322, 518 N.E.2d 602 (10th Dist. 1987).

■ In reviewing claims under Ohio Revised Code § 4112.02, Ohio uses the same standard employed in the review of cases under Title VII of the Civil Rights Act of 1964.[9] *Barker v. Scovill, Inc., Schrader Bellows Div.,* 6 Ohio St.3d 146, 451 N.E.2d 807 (1983). Consequently, the Court reviews Plaintiff's federal and state race discrimination claims simultaneously.

In the instant case, Plaintiff Eperesi claims there is direct evidence of discrimination. Eperesi argues that such evidence includes the fact that company policy does not expressly prohibit Lead Lane Inspectors from performing PR tests. In this regard, she urges the Court to disbelieve Envirotest's statements that it had a firm policy governing "Fee Collection Procedures." Plaintiff Eperesi also argues that her immediate supervisor, Mary Weston, displayed a personal animus toward her, specifically between the time Eperesi first alleged wage discrimination until the date of her termination in October 1996. She says this animus is evidence of improper motive.

Upon review of the record, this evidence falls short of showing direct evidence of racial discrimination or a retaliatory atmosphere. Having no direct evidence of discrimination, Plaintiff Eperesi must make the showing described in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

In *Kline v. Tennessee Valley Auth.,* 128 F.3d 337 (6th Cir.1997), the Sixth Circuit described the showing required under *McDonnell Douglas* as follows:

When a plaintiff attempts to establish its case using the McDonnell Douglas–Burdine paradigm, the evidence which establishes the prima facie case is extremely important. In order to prove a prima facie case of discrimination, a plaintiff must show: 1) that he is a member of a protected group, 2) that he was subject to an adverse employment decision, 3) that he was qualified for the position, and 4) that he was replaced by a person outside of the protected class.

*Kline,* 128 F.3d at 349 (citations omitted).

■ In disparate treatment cases, a plaintiff can make a *prima facie* claim of discrimi-

---

**9.** In *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civ. Rights Comm'n,* 66 Ohio St.2d 192, 196, 421 N.E.2d 128 (1981), the Court held:

Ohio uses the same test. In previous cases, however, we have determined that federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000e et seq., Title 42, U.S.Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112. *State ex rel. Republic Steel Corp. v. Ohio Civil Rights Comm.,* 44 Ohio St.2d 178, 339 N.E.2d 658 (1975); *Weiner v. Cuyahoga Community College District* (1969), 19 Ohio St.2d 35, 249 N.E.2d 907, *cert. denied,* 396 U.S. 1004, 90 S.Ct. 554, 24 L.Ed.2d 495 (1970).

nation by showing that the defendant treated a non-protected person similarly-situated differently. To make this showing, a plaintiff needs to show that the persons he is being compared with were in a very similar situation. The *Mitchell* court described this as follows:

> As the Sixth Circuit has frequently phrased the requirements of a prima facie claim of disparate treatment using such a "comparable non-protected person was treated better" element as one of the requisites, the plaintiff must produce evidence which at a minimum establishes (1) that he was a member of a protected class and (2) that for the same or similar conduct he was treated differently than similarly-situated non-minority employees. . . .

> \* \* \* \* \* \*

> It is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the "comparables" are similarly-situated in all respects. Thus, to be deemed "similarly-situated", the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*Id.* at 582–83 (citations omitted).

The *McDonnell Douglas* framework consists of three stages. At the first stage, the plaintiff must establish a *prima facie* case that the employer discriminated against him. Second, the employer can produce evidence of a legitimate, nondiscriminatory reason for its action. Finally, the plaintiff attempts to discredit the employer by proving that the employer's reason was a pretext for discrimination. *Id.* at 342.

In the first stage, the plaintiff has the initial burden of establishing, by a preponderance of the evidence, a *prima facie* case.

A plaintiff can do this by showing (1) the plaintiff is a member of a class protected by Title VII; (2) the plaintiff was qualified for a job; (3) the plaintiff was terminated, despite her qualifications; and (4) after this termination, the employer filled the position with a nonmember of the protected class.[10] Once shown, the *prima facie* case requires the employer to go forward with evidence of a nondiscriminatory intent. The *prima facie* case creates a refutable presumption that the real reason was discriminatory. In *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978), the Supreme Court further explained this.

> [W]e are willing to presume this largely because we know from our experience that more often than not people do not act in a totally arbitrary manner, without any underlying reasons, especially in a business setting. Thus, when all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, who we generally assume acts only with some reason, based his decision on an impermissible consideration such as race. *Id.* 438 U.S. at 577.

Since the *prima facie* case creates a presumption of discrimination, if the employer fails to respond to the *prima facie* case and if the trier of fact believes the plaintiff's *prima facie* evidence, then the plaintiff will receive judgment. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Disbelief of the defendant's proffered reasons for their action is not, in itself, sufficient to compel a court to enter judgment for the plaintiff. *Id.; Kline,* 128 F.3d at 343–44, 347 ("will permit" a finding of discrimination) (*Hicks* adopts "permissive pretext" approach rather than Sixth Circuit's "pretext plus" approach to earlier employment discrimination analysis). Only the burden of production shifts to the employer; never does the defendant need to persuade the trier of fact that "it was actually motivated by the proffered reasons."[11] The employer must simply articulate a rea-

---

**10.** *McDonnell Douglas v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

**11.** *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

son for his or her action through the introduction of admissible evidence.

The Title VII plaintiff always maintains the burden of persuasion. This is so because the plaintiff maintains the burden of showing that the employer intentionally discriminated against the plaintiff.[12] If the defendant proffers a reason for its action, the burden of production then shifts back to the plaintiff, who must persuade the trier of fact that the employer's articulated reason is a "pretext." *Kline*, 128 F.3d at 342. Any presumption generated by the *prima facie* case drops out of the case. *Hicks*, 509 U.S. at 510–11.

■ To prove that Defendant Envirotest's reasons are pretextual, Eperesi must show that Envirotest's reasons have no basis in fact, that the reasons did not in fact motivate the discharge or, if they were factors in the defendant's decision, that they were jointly insufficient to motivate the discharge. *Maddox v. University of Tennessee*, 62 F.3d 843, 848 (6th Cir.1995) (citing *Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 266 (6th Cir. 1986), *cert. denied*, 480 U.S. 919, 107 S.Ct. 1375, 94 L.Ed.2d 690 (1987)).

■ In the instant case, Plaintiff Eperesi argues that statements made to her by supervisors Mary Weston and Wanda Taylor indicate that Defendant Envirotest did not tolerate interracial relationships amongst coworkers. Eperesi also says that she and her then boyfriend, Melvin Davis, were not allowed to work in the same station because they were an interracial couple.

Upon review of the record, the Court concludes that Plaintiff Eperesi fails to make a *prima facie* case for discrimination based on her interracial relationship. First, Eperesi fails to give any evidence that she was treated any differently than similarly situated persons. In this regard, Plaintiff Eperesi fails to give any reference to other employees at Envirotest involved in interracial relationships being treated differently than those in same-race relationships. Second, Eperesi fails to give evidence that Defendant Envirotest had adopted a policy against interracial

relationships and attempted to enforced it through company management.

Rather Eperesi only makes allegations that her supervisors, Mary Weston and Wanda Taylor, made statements that Envirotest was unlikely to tolerate interracial relationships. There is no evidence that these statements were made in an official capacity or on behalf of Envirotest as plaintiff's employer. Furthermore, there is no evidence showing that these statements manifested into adverse treatment by Envirotest personnel toward Eperesi because of her relationship with Mr. Davis. This is especially true in light of Eperesi's testimony regarding the nature of the statements by Ms. Weston and Ms. Taylor:

Q: When Ms. Taylor told you this in July of 1996, did you ask anybody at Corporate Headquarters if that, if fact, an interracial relationship would not be tolerated?

A. No, I did not.

Q. Did Ms. Taylor give you anything in writing that said this?

A. No, she did not.

Q. Anyone else tell you that a relationship, interracial relationship, would not be tolerated?

A. Mary Weston handed us both transfers when we walked in, said we could not be there, employed there, being in a relationship together.

\* \* \* \* \* \*

Q. Did Ms Weston say the reason was because you were involved in an interracial relationship?

A. She said there was a lot of problems or talking going on amongst other Inspectors, which other Inspectors were black, which they were all good friends so—

Q. Did she say that the reason you were being asked to transfer was because you were involved in an interracial relationship?

---

**12.** In *Burdine*, the Court wrote that the explanation must be "legally sufficient to justify a judgment for the defendant" if it were believed by the trier of fact.

A. She said we were being asked to transfer because were in a relationship.

Plaintiff's deposition at 23–24.

The statements by Ms. Weston or Ms. Taylor, alone, do not support finding a I company policy or intolerance toward Plaintiff Eperesi because of her interracial relationship. This is especially true considering the affidavits of Mr. Gary Echelberry and Ms. Lee Leob Scott which state that Envirotest is a minority owned company and that there were at the time, a number employees involved in interracial relationships.[13]

Absent evidence that other comparable employees were treated differently, the Court cannot conclude that Defendant Envirotest engaged in a practice of discriminating against employees based on interracial relationships, or that Plaintiff Eperesi was in fact terminated for that reason. Accordingly, Envirotest is entitled to summary judgment on Counts III and VII of the complaint.

### VI

The defendant next says it is entitled to judgment because Plaintiff Eperesi fails to give evidence that her termination by Defendant Envirotest was in retaliation of plaintiff's complaining about her rate of pay, or alternatively, for her filing a charge of discrimination with the EEOC. Here, defendant argues that plaintiff cannot show any causal connection between her complaints to company management and the EEOC, and Defendant Envirotest's decision to terminate her.

Plaintiff Eperesi argues that Envirotest's reason for firing her should not be believed. In this regard, Eperesi directs the Court to several indicators that she believes are evidence of retaliatory motive for her termination. These include: (1) the fact that she was terminated only one month after alleging wage discrimination and notifying the EEOC; (2) the fact that her "post-termination" evaluation was drastically inconsistent with previous evaluations that ranked her work performance as generally above average; (3) defendants inability to produce a copy of any express company policy outlining the procedures to be followed when administering public relations testing; and (4) the fact that Eperesi's supervisors allegedly told her that an interracial relationship would not be tolerated by Defendant Envirotest.

█ To establish a *prima facie* case for retaliation under Title VII, the Equal Pay or Fair Labor Standards Acts, or alternatively Ohio Rev.Code § 4112.02(A), a plaintiff must demonstrate that: "(1) he engaged in protected activity; (2) an adverse employment decision occurred; and (3) there was a causal connection between the protected act and adverse employment decision." *Williams v. Nashville Network*, 132 F.3d 1123 (6th Cir. 1997) (citing *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 860 (6th Cir.1997)).[14]

If a plaintiff establishes a *prima facie* case for retaliatory treatment, the burden then shifts to the defendant to show some nondiscriminatory reason for the action. *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir.1987), *cert. denied*, 484 U.S. 1067, 108 S.Ct. 1032, 98 L.Ed.2d 996 (1988).[15] If the defendant meets

---

13. Mr. Echelberry states in ¶ 17 of his affidavit: "There are a number of interracial relationships between employees at Envirotest but those relationship, to my knowledge, have never been the basis for any employee disciplinary or other employment action."

Likewise, Ms. Scott states in ¶¶ 11 and 12 of her affidavit: (11) "I was not aware that Ms. Eperesi was in a relationship with an African–American male at the time I made the termination decision;" (12) "Envirotest Systems is a minority owned company and there are a number of employees who are involved in interracial relationships there[.]"

14. Title 29, U.S.C. § 215(a)(3) provides, in pertinent part:

It shall be unlawful for any person—

　　*　　*　　*　　*　　*　　*

(3) to discharge or in any other manner discriminate against an employee because such an employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify to any such proceedings, or has served or is about to serve on an industry committee. . . .

29 U.S.C. § 215(a)(3).

15. In *Wrenn*, the Sixth Circuit required used the following four prong test to decide a claim for retaliation:

(1) that plaintiff engaged in an activity protected by Title VII; (2) that the exercise of his civil

its burden, then the plaintiff must produce direct, indirect, or circumstantial evidence that the defendant's treatment of the plaintiff was the result of a retaliatory motive. *Williams*, 132 F.3d at 1131; *Canitia v. Yellow Freight System, Inc.*, 903 F.2d 1064, 1067 (6th Cir.), *cert. denied*, 498 U.S. 984, 111 S.Ct. 516, 112 L.Ed.2d 528 (1990).

■ Here, Plaintiff Eperesi fails to establish a *prima facie* case of retaliation because she does not show a causal connection between her complaints to management or the EEOC (the protected act) and Envirotest's decision to terminate her.

To establish the "causal link" required to prove retaliatory discharge, as specifically related to filing charges with the EEOC, a plaintiff "need only introduce evidence from which an inference can be drawn that he would not have been discharged had he not filed discrimination charges." *Jackson v. RKO Bottlers of Toledo, Inc.*, 743 F.2d 370, 377 (6th Cir.1984), *cert. denied*, 478 U.S. 1006, 106 S.Ct. 3298, 92 L.Ed.2d 712 (1986). Plaintiff Eperesi provides such evidence by showing that the timing of Defendant Envirotest's decision to terminate her (October 31, 1996) occurred only one month after she filed her claim with the EEOC.[16] However, despite giving evidence sufficient to raise an inference of retaliation, Plaintiff Eperesi fails to show that Defendant Envirotest's reason for terminating her is pretextual.

The correct inquiry in determining whether a defendant's reason is pretextual is to find out if the employer "in fact fired [the employee] for this reason." *Jackson*, supra at 378. Pretext is shown when the plaintiff establishes that the employer's proffered reason for the discharge simply is not worthy of

rights was known by the defendant; (3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action.
*Id.* at 500.

**16.** In deposition testimony, Plaintiff Eperesi states:

Q. Ms. Eperesi, on October 31, 1996, did you tell Mary Weston when you were told to leave the premises that you were going to file a Charge with the EEOC or the OCRC?

belief. *Burdine*, 450 U.S. at 256; *Kline*, 128 F.3d at 342–343.

In the instant case, it is undisputed that Plaintiff Eperesi performed two PR tests on October 30, 1996. Plaintiff says that she performed these tests understanding that she had the authority given her position as a Lead Lane Inspector. She cites to her job description and the Fee Collection Procedures manual for support. Plaintiff's job description provides in pertinent part:

Lead Lane Inspectors are part-time hourly employees who are under the supervision of the Station Manger and the guidance of the Assistant Manager. Their demonstrated expertise in the lane function and customer service has moved them toward the management level. Their duties may include:

\* \* \* \* \* \*

—Conducting vehicle emissions inspections

—Supplying authorized information to the customers

—Performing pre-test inspection

Plaintiff memorandum, Exhibit 8—Job Description.

As related, the Fee Collection Procedures Manual at ¶ 1.1, captioned "Fees—General," expressly describes PR tests as needing management approval. This provision provides in part:

B. Effective 1–1–93, the Ohio AIM test fee structure is as follows:

4. Any P.R., State, or Facility tests are conducted at no charge (only if the required approval has been obtained from Management).

A. No.
Q. Thanks. You already filed the Charge; had you not?
A. Yes.
Q. And you say Ms. Weston already knew that you done [sic] so?
A. Ms. Weston, Nancy Williams, Vega.
Q. Why do you say that?
A. Because I told everyone of them.
Q. When did you tell them that?
A. Around the middle of September, end of September.

Plaintiff memorandum, Exhibit 7—Fee Collection Procedures.

Plaintiff Eperesi argues that because her job description describes her as "moving toward management," she was not incorrect in thinking she had authority to execute the PR tests. She says that her understanding of the PR test procedures differs from that conveyed by Ms. Scott and Ms. Taylor. In this regard, Eperesi argues that both Ms. Taylor and Ms. Williams testified that Plaintiff Eperesi had "supervisory responsibilities." Eperesi argues that these responsibilities should be construed to included authority to perform PR tests.

Upon review of the record, the Court concludes that Plaintiff fails to give evidence of her authority to perform PR tests. Plaintiff Eperesi's belief that the position of Lead Lane Inspector, as described as a "move toward management," entitled her to perform the tests, is insufficient in this regard. It cannot be said that an employee in a job that has been characterized as a "move toward management" automatically assumes the duties and responsibilities otherwise reserved for those "actually in management." Such is the case here and it is clear that Eperesi was not *yet* in management.

Because Plaintiff Eperesi fails to give evidence sufficient to show that she was terminated for reasons other than her executing the unauthorized PR tests, Defendant Envirotest is entitled to summary judgment on Plaintiff's claims for retaliation under Counts IV, V and VIII of the complaint.

## VII

Defendant also says that it is entitled to summary judgment on Plaintiff Eperesi's claim that Envirotest violated public policy under Ohio law. Envirotest argues that this claim fails because Eperesi cannot show that Envirotest engaged in any conduct that violated her civil rights.

The evolving law of public policy torts in Ohio was most recently clarified by the Ohio Supreme Court in *Kulch v. Structural Fibers, Inc.*, 78 Ohio St.3d 134, 677 N.E.2d 308 (1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 586, 139 L.Ed.2d 423 (1997). There, the court held that an employee discharged for filing a complaint with OSHA may maintain a separate tort action for violation of public policy despite the fact that the plaintiff failed to comply with the Ohio Whistleblower Act. *Id.* at 162, 677 N.E.2d 308. See also *Greeley v. Miami Valley Maint. Contractors, Inc.*, 49 Ohio St.3d 228, 233–34, 551 N.E.2d 981 (1990) (stating that "the time has come for Ohio to join the great number of states which recognize a policy exception to the employment-at-will doctrine.").

■ To make out a claim for wrongful discharge in violation of public policy, a plaintiff must demonstrate the following: (1) that [a] clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element); (2) that dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element); (3) the plaintiff's dismissal was motivated by conduct related to the public policy (the causation element); and (4) the employer lacked overriding legitimate business justification for the dismissal (the overriding justification element). *Kulch*, 78 Ohio St.3d at 151, 677 N.E.2d 308.[17]

■ In the instant case, Plaintiff Eperesi's claim for wrongful discharge violating public policy fails on the fourth prong as stated above. Because the Court has determined that Defendant Envirotest in fact had a legitimate business justification for terminating Eperesi, her claim under Count IX must fail since she is unable to establish that Defendant Envirotest "lacked of an overriding legitimate business justification for the dismissal." *Id.* at 151, 677 N.E.2d 308.

---

**17.** In *Kulch*, the Ohio Supreme Court adopts the test set forth by Villanova Law Professor H. Perritt, in his article THE FUTURE OF WRONGFUL DISMISSAL CLAIMS· WHERE DOES EMPLOYER SELF INTEREST LIE⫽ 58 U.Cin.L.Rev. 397, 398–399 (1989). *See also Collins v. Rizkana*, 73 Ohio St.3d 65, 69–

74, 652 N.E.2d 653 (1995), *recon'd. denied*, 74 Ohio St.3d 1409, 655 N.E.2d 188 (1995) (determining that, in Ohio, a cause of action may be brought for the tort of wrongful discharge in violation of public policy based on sexual harassment/discrimination in the workplace).

Because Plaintiff Eperesi does not give sufficient evidence that Defendant Envirotest violated her civil rights, her claim for violation of public policy fails as a matter of law. Accordingly, Defendant Envirotest is entitled to judgment on Count IX of the complaint.

For these reasons set forth herein, Defendant Envirotest's motion for summary judgment is granted.

IT IS SO ORDERED.