**Everett PERRY, Plaintiff,**

v.

**Kenneth MCGINNIS, Director of Michigan Department of Corrections; Marjorie Van Ochten, Administrator of the Office for Policy and Hearings for the Michigan Department of Corrections; Leonard Den Houter, Hearing Officer/Supervisor of the Office for Policy and Hearings; Richard Stapleton, Manager of the Hearings and Appeals Division of the Office of Policy and Hearings, in their official and individual capacities, Defendants.**

**Civ.A. No. 96–CV–71373–DT.**

United States District Court, E.D. Michigan, Southern Division.

April 15, 1998.

---

William H. Goodman, Detroit, MI, for Plaintiff.

Frank J. Monticello, Lansing, MI, for Defendants.

## OPINION

DUGGAN, District Judge.

This matter is before the Court on defendants' motion for summary judgment. For the reasons set forth in this Opinion, defendants' motion is granted and this action is dismissed.

### Background

Plaintiff Everett Perry was a hearing officer for the Michigan Department of Corrections ("MDOC") between October 30, 1988 and November 5, 1993. Defendants were Plaintiff's superiors at MDOC and at the Office of Policy and Hearings ("OPH") for MDOC.[1] Perry alleges that defendants terminated him due to his race (African–American).

As a hearing officer, plaintiff was responsible for conducting hearings regarding major misconduct tickets received by prisoners. Plaintiff received "satisfactory" performance ratings from his supervisor, Tom DeHaem (Perry's original supervisor), during the six month probationary period at the beginning of plaintiffs tenure at OPH. Defendant Van Ochten gave plaintiff two more satisfactory ratings in November 1989 and October 1990.

On March 8, 1990, Den Houter (Perry's supervisor beginning in October 1989) authored a memorandum indicating that three of plaintiff's hearing reports were analytically inadequate or failed to follow the correct procedure. On March 29, 1990, Den Houter issued another memorandum stating that a hearing report authored by plaintiff contained a statement about the need to encourage the continued participation of informants. Den Houter stated that this was unnecessary to the hearing report and that it directly

---

1. Specifically, defendant Leonard Den Houter was plaintiff's direct supervisor from October 1989 until plaintiffs dismissal. Defendant Richard Stapleton was the manager of the Hearing and Appeals Division of the OPH and became Den Houter's direct superior in September 1993. Defendant Marjorie Van Ochten was the administrator of the OPH. As such, she was Den Houter's direct superior until September 1993, and Stapleton's superior from that point onward. Van Ochten reported in turn to defendant Kenneth McGinnis, the director of MDOC.

contradicted MDOC policy regarding informants.

Den Houter continued to find problems with plaintiff's hearing reports. Between May 15, 1990 and October 22, 1993, he authored eighteen memoranda critical of plaintiffs performance. These memoranda cited problems with plaintiffs hearing reports, including: finding a prisoner guilty of an offense for which another prisoner had been charged, citing insufficient evidence to support his factual and credibility determinations, failing to set forth relevant evidence, making procedural errors, using the wrong standard of proof, and analyzing the facts in an inadequate manner.

Plaintiff received conditional service ratings from Den Houter on February 10, 1993, May 11, 1993, and again on September 3, 1993. Following the September 3, 1993 interim service rating report, Den Houter recommended to defendant Stapleton that plaintiff receive yet another unsatisfactory rating. Stapleton agreed and recommended to defendant Van Ochten that plaintiff be terminated. MDOC terminated plaintiff on November 5, 1993.

Plaintiff initiated this action on March 27, 1996. Plaintiff filed his first amended complaint on June 16, 1996.

On September 11, 1996, this Court issued an order dismissing plaintiff's First and Fifth Amendment claims, his procedural due process claim, and plaintiff Kathleen Perry's 42 U.S.C. § 1983 loss of consortium claim, but denied defendants' motion to dismiss plaintiff's equal protection, and Elliott–Larsen Civil Rights Act ("Elliott–Larsen"), Mich. Comp.Laws § 37.2101 et seq., claims.

On September 20, 1996, plaintiff filed his second amended complaint. This complaint asserted a claim under 42 U.S.C. § 1983, which alleged that defendants violated plaintiff's First Amendment right to free speech, Fourteenth Amendment right to equal protection, and his substantive due process rights under the Fifth and Fourteenth Amendments. Plaintiff also asserted claims under Elliott–Larsen and the Michigan Constitution.

On March 14, 1997, this Court issued an order dismissing plaintiff's First and Fifth Amendment claims, but denied defendants' motion to dismiss plaintiff's equal protection, substantive due process, and Elliott–Larsen claims. In a separate order, the Court denied plaintiff's motion for reconsideration, dismissed those substantive due process claims unrelated to plaintiff's "allegations of race discrimination or Fourteenth Amendment Equal Protection claims," and dismissed Kathleen Perry's remaining loss of consortium claims. Plaintiff agreed to voluntarily dismiss his Michigan Constitutional claim in his brief in response to defendants' motion to dismiss the second amended complaint.[2]

On September 26, 1997, plaintiff filed a motion to voluntarily dismiss his remaining claims without prejudice, specifically reserving the right to re-assert them at a later time. Defendants objected to any dismissal without prejudice.

On December 5, 1997, following a hearing, the Court issued an order dismissing plaintiff's "substantive due process" claim, but otherwise denying plaintiff's motion to voluntarily dismiss his claims. Thus, plaintiff's remaining claims are an equal protection claim and an Elliott–Larsen claim, both of which allege racial discrimination on the part of defendants.

### Standard of Review

Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of informing the court of the basis for his or her motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The movant must demonstrate either the absence of a genuine issue of fact or the absence of evidence supporting the nonmoving party's case. 477 U.S. at 325, 106 S.Ct. at 2554. Entry of summary judgment is

---

**2.** The Court did not issue an order acknowledging the voluntary dismissal of the Michigan Constitution claim. To avoid any ambiguity with respect to the status of this claim, the Court rules that the Michigan Constitution claim is now dismissed without prejudice.

appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." 477 U.S. at 322, 106 S.Ct. at 2552. The substantive law identifies which facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "The district court is not to make credibility determinations or weigh the evidence" upon a motion for summary judgment. *Adams v. Metiva,* 31 F.3d 375, 384 (6th Cir.1994) (citing *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513).

When determining whether there is a genuine issue for trial, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *accord Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "Although [the nonmoving party] is entitled to a review of the evidence in the light most favorable to him or her, the nonmoving party is required to do more than simply show that there is some 'metaphysical doubt as to the material facts.'" *Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 800 (6th Cir.1994) (quoting *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356). Rule 56(e), "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(e)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512.

### Discussion

The Equal Protection Clause and Elliott–Larsen prohibit discrimination by employers. *See Gutzwiller v. Fenik,* 860 F.2d 1317, 1325 (6th Cir.1988); *Marsh v. Dep't of Civil Service,* 142 Mich.App. 557, 568 n. 10, 370 N.W.2d 613 (1985).[3] Plaintiff attempts to prove these claims circumstantially by showing that defendants treated him differently than similarly situated white hearing officers.

To make out a discrimination case using circumstantial evidence, a plaintiff must first establish a *prima facie* case of discrimination by introducing evidence sufficient to support a finding that (1) plaintiff was a member of the protected class, (2) plaintiff suffered an adverse employment action, (3) plaintiff was qualified for the position lost or not gained, and (4) a person not of the protected class replaced, or was selected, over plaintiff.[4] *Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d 1078, 1081 (6th Cir.1994) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Gagne v. Northwestern Nat'l Ins. Co.,* 881 F.2d 309, 313 (6th Cir.1989)). The final element can also be satisfied by showing that a "comparable non-protected person was treated better." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992). In such case, "the plaintiff must produce evidence which at a minimum establishes that (1) he was a member of a protected class and (2) that for the same or similar conduct he was treated differently than similarly-situated non-minority employees." *Id.* at 583.[5]

3. Plaintiff's equal protection claim is brought pursuant to 42 U.S.C. § 1983, which imposes liability for constitutional violations on those acting under "color of state law." *Shabazz v. Gabry,* 123 F.3d 909, 912 (6th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 608, 139 L.Ed.2d 495 (1997). Elliott–Larsen prohibits discrimination by all employers. *Marsh,* 142 Mich.App. at 567, 370 N.W.2d 613.

4. The showing needed to make out a discrimination claim under the Equal Protection Clause and Elliott–Larsen is the same as that for a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq. See Gutzwiller,* 860 F.2d at 1325 (comparing equal protection claims to Title VII claims); *Simpson v. Midland–Ross Corp.,* 823 F.2d 937, 940 (6th Cir.1987) (comparing Elliott–Larsen claims to Title VII claims).

5. Alternatively, a plaintiff can establish a discrimination claim by presenting direct evidence of the defendant's discriminatory intent. *See id.* at 582 n. 4. If the jury believes such evidence, the burden of persuasion shifts to the defendant "to prove that it would have terminated the plaintiff even had it not been motivated by ... discrimination." *See Manzer,* 29 F.3d at 1081.

A plaintiff's establishment of a *prima facie* case "in effect creates a presumption that the employer unlawfully discriminated against the employee." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). Once the plaintiff has made a *prima facie* case, the burden shifts to the defendant to rebut the presumption of discrimination by producing evidence of a legitimate, nondiscriminatory reason for which the plaintiff was rejected or someone else was preferred. *Manzer,* 29 F.3d 1078, 1082 (citing *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094). The burden of production then shifts back to the plaintiff, who must produce evidence that the defendant's asserted legitimate, nondiscriminatory reason for its adverse employment decision is merely a pretext for discrimination. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095.

■ Defendants argue that plaintiff cannot make out a *prima facie* case of discrimination. There is no dispute that plaintiff was a member of a protected class and that he suffered an adverse employment action. Defendants argue, however, that plaintiff was not qualified to be a hearing officer because he was not performing at a satisfactory level. A plaintiff is not considered to be qualified for his position if he fails to meet his employer's expectations. *See Ang v. Procter & Gamble Co.,* 932 F.2d 540, 548 (6th Cir.1991).

Defendants have produced evidence that they were dissatisfied with plaintiff's job performance. Den Houter's dissatisfaction with Perry's performance is well documented in the memoranda pointing out plaintiff's short comings as a hearing officer. Den Houter believed that plaintiff's hearing reports exhibited, *inter alia,* weak analysis, the failure to develop material facts, procedural errors, and use of the wrong standard of proof.

In response to this evidence, plaintiff argues that to meet Den Houter's expectations, he would have been compelled to find more prisoners guilty and to unquestioningly believe the prison staff's reports of prisoner misconduct. Plaintiff argues that meeting these expectations would be unethical and would result in due process violations for the prisoners. Plaintiff further argues that the mistakes Den Houter found in plaintiff's work product were "petty."

■ The Court does not believe that plaintiff has raised a genuine issue of fact with respect to the issue of discrimination based on race. A plaintiff cannot raise a genuine issue of fact regarding the quality of his work by merely challenging the judgment of his superiors. *See McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1160 (6th Cir.1990). Although plaintiff may have believed that defendants' expectations were petty and would result in improper hearings, these objections go to defendants' judgment regarding the way in which hearing officers should perform their jobs.[6] This is not sufficient to prove a *prima facie* case of race discrimination. *See id.*

■ Defendants also argue that plaintiff was not treated differently than similarly situated white hearing officers. Plaintiff argues that white hearing officers were not disciplined for making the same kinds of mistakes as those made by plaintiff. In *Mitchell,* 964 F.2d at 583 (citations omitted), the Sixth Circuit stated:

> It is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the "comparables" are similarly situated in all respects. Thus, to be deemed "similarly-situated", the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

To support his claim of discrimination, plaintiff argues that other employees had made similar mistakes and they did not receive the discipline received by plaintiff. Plaintiff points out that other hearing officers have

---

**6.** Plaintiff also argues that defendants did not review enough of plaintiff's hearing reports to make an accurate assessment of plaintiff's abilities as a hearing officers. In the Court's view, this is essentially a challenge to the judgment of plaintiff's supervisors.

admitted to making errors in hearing reports, including, placing the wrong inmate number on hearing reports, failing to type the entire charge on the reports, and making typos in the reports. (Pl.'s Ex. Y.)

The Court does not believe that plaintiff has raised a genuine issue of fact on this issue. Plaintiff was fired based on his inadequacies in analyzing facts, assessing the credibility of witnesses, understanding the definitions of different forms of misconduct, and making an adequate record of his cases. (Van Ochten Dep. 86–87, Defs.' Ex. 2.) The conduct asserted by plaintiff against the other hearing officers was of a less fundamental nature. Moreover, unlike the other hearing officers, plaintiff's errors were repetitive and led to more complaints from institutional staff. (Den Houter Aff. ¶ 4, Defs.' Ex. 8; Den Houter Dep. at 78, Defs.' Ex. 4.) On this record, the Court must conclude that plaintiff has failed to show that he was similarly situated to the other hearing officers.

Plaintiff may honestly believe that his discharge was without justification. However, the issue in this case is not whether the defendants had "good cause" for discharging plaintiff; the issue is whether or not the decision to discharge him was based on race. "The Elliott–Larsen Civil Rights Act protects against discrimination; it does not provide a remedy for unfair treatment." *Brocklehurst v. PPG Indus. Inc.*, 123 F.3d 890, 895 (6th Cir.1997). This Court is satisfied that plaintiff has failed to present evidence sufficient to create a *prima facie* case of discrimination.

Accordingly, defendants' motion for summary judgment shall be granted and plaintiff's § 1983 equal protection claim and his Elliott–Larsen claim shall be dismissed.[7]

An Order consistent with this Opinion shall issue forthwith.

---

7. Because the Court has found that plaintiff has failed to show that defendants discriminated against him based on his race in violation of the equal protection clause, the Court does not address defendants' argument that they are shielded from liability under the qualified immunity doctrine.