**Tracey L. GOVER, Plaintiff,**

v.

**SPEEDWAY SUPER AMERICA, LLC, Defendant.**

No. C–3–02–77.

United States District Court, S.D. Ohio, Western Division.

July 9, 2003.

**860**

James Robert Livingston, Shipman, Dixon & Livingston Co., L.P.A., Troy, OH, for Plaintiff.

Audrey S. Adams, Diane Leslie Gentile, Cooper & Gentile Co., Dayton, OH, for Defendant.

## DECISION AND ENTRY OVERRULING IN PART AND SUSTAINING IN PART DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT (DOC. # 23)

RICE, Chief Judge.

The instant litigation arises out of the termination of Plaintiff Tracey L. Gover ("Gover") from her employment with Defendant Speedway Super America, LLC ("Speedway"). According to her Complaint (Doc. # 1), Plaintiff was hired by Speedway in January of 1994. Between November of 1997, and May 15, 2001, Plaintiff held the position of Store Manager at the Tipp City store. On May 13, 2001, Gover, who was six months pregnant, was contacted by Ms. Melissa Sorah, the Assistant Manager, because the main safe would not work. According to Plaintiff's affidavit, she contacted maintenance to see when they could fix the safe, but was told they could not come until the following day. Plaintiff then contacted her District Manager, Mr. Brian Brush ("Brush"), to receive his instructions as to what to do. She informed him that she had two safes: one in the floor and one in her office. She said that the floor safe did not have functional keys, but that she would place the money in that safe if it had a slot in the lid, because it was secure and had a security camera on it. She further stated that, if no slot existed, her only choice was to place the funds in her office safe and put it on "day lock," meaning it would be only partially secure. According to Plaintiff, Brush approved of these actions. After finding no functional keys and no slot in the floor safe, Plaintiff placed the funds in her office safe. The following morning, Gover was contacted by the Miami County Sheriff's Department, which informed her that the store had been left open and unattended. The security camera revealed that a store employee had taken the money from the safe and the cashier drawer and had left. Approximately $8,181.00 in company funds was taken. On May 15, 2001, Gover was terminated for "unsecured company funds." Gover alleges that she was terminated, because she was female and pregnant. She further alleges that other employees who were involved in this incident, but were neither female nor pregnant, received a lesser punishment.

On January 23, 2002, Plaintiff initiated the instant lawsuit in the Miami County Court of Common Pleas (Doc. # 1), alleging that her termination violated Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e; the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e(k); the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.; and Ohio Revised Code § 4112.02. On February 19, 2002, Defendant removed the action to this Court, alleging that the Court has federal question subject matter jurisdiction (Doc. # 1). Plaintiff responded by filing a Motion for

Remand (Doc. # 6), and Defendant sought summary judgment on Plaintiff's claims (Doc. # 9).

On December 2, 2002, this Court denied Plaintiff's Motion for Remand, and it sustained in part and overruled in part Defendant's Motion for Summary Judgment (Doc. # 20). In that Decision, the Court granted summary judgment on Plaintiff's disability discrimination claims, pursuant to the ADA and Ohio Rev.Code Ch. 4112, on the ground that pregnancy is not a disability within the meaning of those statutes. With regard to Plaintiff's sex and pregnancy discrimination claims (brought pursuant to both federal and state law), the Court concluded that Plaintiff had presented a *prima facie* case of discrimination. Because discovery had not yet been completed, the Court further concluded that Plaintiff should be given an opportunity to conduct discovery on the issue of pretext, prior to a ruling on that issue. Accordingly, Defendant's Motion for Summary Judgment on those claims was overruled.

Pending before the Court is Defendant's Renewed Motion for Summary Judgment on the issue of pretext (Doc. # 23). For the reasons assigned, Defendant's Motion is SUSTAINED in PART and OVERRULED in PART.

## I. *Standard Governing Summary Judgment Motions*

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548; *see also Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991)(The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.")(quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)(quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law, Fed.R.Civ.P. 50). *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106

S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Michigan Protection and Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994)("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all *reasonable* inferences in favor of that party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the factfinder. 10A Wright, Miller & Kane, *Federal Practice and Procedure*, § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir.1989), *cert. denied*, 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990); *see also L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.*, 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992)("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment....") Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

## II. *Merits of Defendant's Renewed Motion for Summary Judgment on the Issue of Pretext (Doc. # 23)*

As stated in this Court's previous Decision (Doc. # 20), the United States Supreme Court set forth an evidentiary framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), for analyzing cases alleging workplace discrimination based on circumstantial evidence. Under the *McDonnell Douglas* burden-shifting framework, a plaintiff bears the burden of establishing, by a preponderance of the evidence, a *prima facie* case of discrimination. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582–83 (6th Cir.1992)(citing *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817); *Warfield v. Lebanon Correctional Inst.*, 181 F.3d 723, 728–29 (6th Cir.1999). Once the Plaintiff establishes a *prima facie* case, an inference of discrimination arises. The burden of production then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *McDonnell Douglas*, 411 U.S.

at 802, 93 S.Ct. 1817. The Plaintiff then assumes the final burden of proving that an employer's articulated nondiscriminatory reason for taking an adverse action towards her was unlawfully pretextual. *See Mitchell,* 964 F.2d at 584, n. 6. She must prove "that the [employer's] asserted reasons have no basis in fact, that the reasons did not in fact motivate the discharge, or, if they were factors in the [employer's] decision, that they were jointly insufficient to motivate the discharge." *Manzer v. Diamond Shamrock Chem. Co.,* 29 F.3d 1078 (6th Cir.1994); *Burns v. City of Columbus,* 91 F.3d 836, 844 (6th Cir. 1996).

In its prior ruling, this Court concluded that Plaintiff has established a *prima facie* case of sex and pregnancy discrimination. In its Motion, Defendant has proffered that Plaintiff was terminated not for discriminatory reasons but, rather, for "unsecured company funds." Thus, in order to survive summary judgment, Plaintiff must, at this juncture, present evidence to create a genuine issue of material fact that Defendant's proffered explanation is pretextual. In *Manzer,* a case dealing with discriminatory discharge, the Sixth Circuit elaborated on how these methods of challenging the employer's explanation may be satisfied:

> The first type of showing is easily recognizable and consists of evidence that the proffered bases for the plaintiff's discharge never happened, *i.e.,* that they are "factually false." *[Anderson v.] Baxter Healthcare,* 13 F.3d [1120] at 1123–24 [(7th cir.1994)]. The third showing is also easily recognizable and, ordinarily, consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff. These two types of rebuttals are direct attacks on the credibility of the employer's proffered motivation for firing plaintiff and, if shown, provide an evidentiary basis for what the Supreme Court has termed "a suspicion of mendacity." *[St. Mary's Honor Center v.] Hicks,* 509 U.S. [502] at 511, 113 S.Ct. [2742] at 2749[, 125 L.Ed.2d 407 (1993)]. As *Hicks* teaches, such a showing permits, but does not require, the factfinder to infer illegal discrimination from the plaintiff's prima facie case.

> The second showing, however, is of an entirely different ilk. There, the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct *could* motivate dismissal. The plaintiff's attack on the credibility of the proffered explanation is, instead, an indirect one. In such cases, the plaintiff attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was *more* likely than that offered by the defendant. In other words, the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it "more likely than not" that the employer's explanation is a pretext, or coverup.

29 F.3d at 1084 (emphasis in original).

Herein, Plaintiff argues that she was treated differently than two similarly situated individuals, to wit: (1) Mr. Brush, her District Manager, who was not disciplined for the loss of funds at her store, and (2) Mr. Gary Abner, the Manager of the Troy store, who was "written up" but not terminated for leaving $50.00 of his own money unsecured. Thus, Plaintiff relies principally on the third *Manzer* approach for pretext, *i.e.,* that Defendant's proffered reason is insufficient to motivate the discharge. As an alternative argument, Plaintiff asserts that the sheer weight of

evidence suggests that Defendant's proffered explanation for her discharge is pretextual. Thus, she has also relied upon the second *Manzer* test.

### A. Second Manzer Approach: Defendant's Reasons Did Not, In Fact, Motivate the Discharge

■ Plaintiff asserts that she can satisfy the second *Manzer* test, *i.e.*, that Speedway's articulated explanation did not actually motivate Plaintiff's discharge. As stated, *supra*, under this approach, Plaintiff must indict the credibility of Speedway's explanation "by showing circumstances which tend to prove that an illegal motivation was more likely than that offered by the defendant." *Manzer*, 29 F.3d at 1084. "In other words, the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or cover-up." *Id.* In doing so, Plaintiff "may not rely simply upon [her] *prima facie* evidence, but must, instead, introduce additional evidence of [prohibited] discrimination." *Id.; Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 472 (6th Cir.2002); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) ("[A] plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.").

In support of her assertion that sex or pregnancy discrimination was, more likely than not, the motivation for her termination, Plaintiff argues that she was: (1) passed over, in favor of a less experienced male, for promotion to Manager of the Troy store; (2) passed over while pregnant for three different Store Manager positions; (3) advised that she had been passed over for at least those last three jobs because of "all I had going on in my life," which she understood was a reference to her being pregnant; (4) not transferred as requested to stores close to Piqua, and, instead, a male was given that Store Manager job; and (5) brushed off or ignored by supervisors when she complained about offensive comments by co-workers about pregnant workers or working single mothers (Doc. # 285 at 3).

None of these incidents supports an inference that Plaintiff's termination by Khatibi was motivated, even in part, by discriminatory animus. Plaintiff states in her affidavit that her then-District Manager Dennis Cooper promoted Larry Maddox to Manager of the Troy store and that he failed to promote her on three other occasions to manager positions (Gover Aff. ¶¶ 5–7). In addition, Plaintiff indicates Mr. Cooper made the comment that he was not promoting her because she had "too much going on in [her] personal life." (*Id.* ¶ 8). Plaintiff states in her affidavit that although she had requested a position closer to her home in Piqua, her then-District Manager Aaron Klumb failed to offer her the position of Manager of the Piqua Interstate store when it became available (*id.* ¶ 10). None of these actions involved either Khatibi or Plaintiff's most recent supervisor, Brush, the individuals who were her superiors and the purported decisionmakers at the time of her termination. The Sixth Circuit has held that the opinions expressed by employees who are not directly involved in the decision-making process do not raise a genuine issue of material fact concerning pretext. *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir.1998) (" '[S]tatements by non-decisionmakers ... [can not] suffice to satisfy the plaintiff's burden ...' of demonstrating animus.") (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)) (O'Connor, J., concurring); *Smith v. Leggett Wire Co.*, 220 F.3d 752 (6th Cir.2000)

(rejecting Smith's attempt to prove that his threat of workplace violence did not actually motivate his discharge when the alleged racial comments were not made by the persons who terminated his employment).

In addition, Plaintiff's general assertion that "management" brushed off or ignored her complaints about co-worker's comments concerning pregnant women or working single mothers cannot, without more, be imputed to Khatibi. Plaintiff has provided no evidence that these complaints were brought to his attention. Moreover, such generalized and conclusory assertions are insufficient to raise a genuine issue of material fact that Plaintiff's second-level supervisor, Khatibi, terminated her employment due to a discriminatory animus against pregnant women or women in general. *See Wixson v. Dowagiac Nursing Home,* 87 F.3d 164 (6th Cir.1996). Construing Plaintiff's evidence in the light most favorable to her, she has failed to raise a triable issue on the issue of pretext.[1] Accordingly, Defendant's Motion for Summary Judgment, on the ground that Plaintiff cannot create a genuine issue of material fact on the issue of pretext under the second *Manzer* test, is SUSTAINED.

B. *Third Manzer Approach: Defendant's Proffered Reason is Insufficient to Motivate the Discharge*

In her Memorandum, Plaintiff asserts that she can establish pretext under the third *Manzer* test. Under this approach, the court usually looks at other employees outside of the protected class who engaged in substantially identical conduct but were treated differently.

To be similarly situated, "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Ercegovich[ v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir.1998)] (quoting *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir. 1992)). Exact correlation is not required, however. *See id.* Rather, "the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in 'all of the relevant aspects.' " *Ercegovich,* 154 F.3d at 352 (quoting *Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 802 (6th Cir.1994)); *see also Harrison v. Metro. Govt.,* 80 F.3d 1107, 1115 (6th Cir.1996) (noting that "precise equivalence in culpability between employees" is not required when comparing similarly situated, non-minority employees).

*Smith v. Leggett Wire Co.,* 220 F.3d 752, 762 (6th Cir.2000).

█ The Court begins with Plaintiff's assertion that Mr. Gary Abner, the manager of the Troy store, is an appropriate comparator for Plaintiff's behavior and

---

1. The Supreme Court's recent decision in *Desert Palace, Inc. v. Costa,* ── U.S. ──, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003), does not alter this conclusion. In that decision, the Supreme Court held that direct evidence is not required in order to obtain a jury instruction regarding mixed-motive discrimination. Rather, "a plaintiff need only present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that 'race, color, religion, sex, or national origin was a motivating factor for any employment practice.' " *Id.,* 123 S.Ct. at 2155. Plaintiff has not asserted that this is a mixed-motive case, nor is this litigation at the jury instruction stage. Moreover, this Court has not required Plaintiff to present direct evidence in order to avoid summary judgment. Accordingly, *Desert Palace* is inapposite.

subsequent termination. According to Plaintiff's affidavit, approximately two weeks after Plaintiff's employment was terminated, Abner was "written up," but not terminated, for unsecured company funds. (Doc. # 12, Gover Aff. ¶ 28). She notes that she and Abner shared the same second-level supervisor, Regional Supervisor Fred Khatibi ("Khatibi"), and that Khatibi was involved in both the firing of Plaintiff and the non-termination of Abner. Defendant has responded that Abner is not a comparable manager, on the grounds that he had a different first-level supervisor, Mr. Aaron Klumb, and that his infraction was not analogous.

The Court disagrees with Defendant's argument that Abner cannot be an appropriate comparator, due to the fact that he and Plaintiff had different first-level supervisors. Although Klumb asserts in his affidavit that he issued the June 6, 2001, written reprimand to Abner, he further states: "I consulted with my Regional Supervisors before I issued the written reprimand to Mr. Abner." (Klumb Aff. ¶¶ 2–3). Construing the evidence in the light most favorable to Plaintiff, Khatibi thus was involved in the process of determining the appropriate discipline for both Plaintiff's and Abner's violation of company's "unsecured company funds" policy.

However, even assuming that Khatibi is appropriately considered the decisionmaker for the disciplinary actions against both Plaintiff and Abner, the disparity between Plaintiff and Abner's conduct is sufficient to prevent them from being similarly situated. Unlike Plaintiff, who had left in excess of $8,000 of *company* funds in an unsecured state, Mr. Abner's written reprimand was based on his leaving $50 of his *own* money unattended and unsecured on his desk (Doc. # 14, Klumb Aff. ¶ 2). There was no loss of Speedway funds as result of Mr. Abner's actions. In contrast, Plaintiff's conduct resulted in the compa-

ny's loss of more than $8,000. Although both of these incidents involved money being left unsecure, they cannot be considered similar in all *relevant* respects, in light of the differing ownership of the funds, the dollar amounts at stake, and the disparate consequences that resulted from the money's unsecured status.

Plaintiff's second proposed comparator, her supervisor, Brian Brush, poses a more troublesome scenario. Beginning with their relevant conduct, Plaintiff states in her affidavit that after she contacted maintenance about the broken main safe, she contacted Brush to receive his instructions as to what to do (Gover Aff. ¶¶ 14–15). After Brush asked if back-up safes were available, Plaintiff informed him about the two safes that were available: one in the floor and one in her office. Plaintiff indicates that she informed Brush that the floor safe did not have functional keys, but that she would place the money in that safe if it had a slot in the lid, because it was secure and had a security camera on it (*id.* ¶ 16). She further stated that, if no slot existed, her only choice was to place the funds in her office safe, which could only be used in "day lock." (*Id.*) Plaintiff indicates that Brush approved of these actions. After finding no functional keys and no slot in the floor safe, Plaintiff placed the funds in her office safe, just as she had discussed with Brush. Plaintiff further instructed the cashiers to keep the safe in "day lock" mode, to remember that it was not secure, to keep the door to the back room locked, and to pass those instructions along to the following shifts (*id.* ¶ 18). After the theft was discovered, Plaintiff and Brush met with Khatibi, who was obviously upset (*id.* ¶ 24). After Khatibi left, Brush indicated to Plaintiff that Khatibi felt that they had both erred, that he (Brush) had not understood what Plaintiff had said, and that he thought she had not understood what he had said (*id.*).

The next day, Plaintiff was terminated; Brush was not. The decision to terminate Plaintiff's employment and not to terminate Brush's was made by Khatibi (Doc. # 14, Brush Aff. ¶ 3)

Under Brush's version of the events of May 13, 2001, Plaintiff contacted him, stating that the primary safe would not lock and that maintenance could not repair the safe until the following day, and asking for instructions (Brush Aff. ¶ 4). Brush states that he asked her if there were any floor safes at the store, and Plaintiff indicated there were such safes (*id.* ¶ 5). He then instructed her to secure the money in a specific secured safe and discussed with her the positioning of a store security camera on that safe for security purposes (*id.*). Brush states that Plaintiff failed to comply with these instructions. Brush's next contact with Plaintiff occurred when she called him, informing him of the theft (see *id.* ¶ 6).

As the non-moving party, the Court must construe the conflicting facts in the light most favorable to Plaintiff and, therefore, for purposes of this Motion, it accepts Plaintiff's rendition of the factual circumstances (which she supported with evidence) as true. With that standard in mind, Plaintiff's actions in placing the funds in her office safe were done with Brush's prior knowledge and agreement. In other words, the conduct of Plaintiff and Brush was not only analogous, it was concerted action and, thus, identical. In addition, Defendant agrees that Plaintiff was terminated by Khatibi, who supervised both Plaintiff (second-level) and Brush (first-level).[2] Thus, Plaintiff has provided

evidence that she and Brush dealt with the same supervisor and engaged in the same allegedly wrongful conduct, yet received different discipline.

Despite these similarities, Defendant asserts that, as a matter of settled law, Plaintiff cannot compare herself with her own supervisor and, therefore, Brush is not an appropriate comparator, as a matter of law.[3] The heart of the issue is whether the differences in Plaintiff and Brush's supervisory duties are material distinctions, such that they constitute "differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Stated differently, Defendant asserts that Plaintiff and Brush are not similar *in all relevant respects,* due to the fact that Brush was her supervisor.

■ The Court recognizes, as argued by Defendant, that differences in job titles, job responsibilities, experience, and disciplinary histories generally are material factors in determining whether two employees are comparable for purposes of comparing differences in the imposed discipline. *See Campbell v. Hamilton Co., Ohio,* 23 Fed.Appx. 318 (6th Cir.2001); *Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796 (6th Cir.1994); *Gore v. Runyon,* 113 F.3d 1234 (6th Cir.1997). For example, in *Campbell,* an unreported decision, the Sixth Circuit concluded that the plaintiff probation officer was not similarly situated to a supervisor in the probation department, both of whom had made racially-charged remarks. The court reasoned:

**2.** Brush's affidavit, in which he stated that Khatibi terminated Plaintiff's employment, was attached to Defendant's Reply Memorandum in Support of its original Motion for Summary Judgment (Doc. # 14).

**3.** Although Defendant repeatedly asserts that an individual may not be compared to her

supervisor, as a matter of law, Speedway has not cited to any case law within this circuit which addresses the scenario at issue, *i.e.,* where two supervisors, albeit of different rank, jointly engaged in the conduct that led to the plaintiff's dismissal, and were disciplined by the same supervisor.

Campbell [the plaintiff] and Boyle [the supervisor] had different job titles, different levels of experience at the time they were disciplined, and different disciplinary histories. At the relevant time periods, Campbell was a probation officer with three years of experience and Boyle was a supervisor with over ten years of experience. This, alone, is enough to prevent Campbell and Boyle from being considered similarly situated. 23 Fed.Appx. at 326; *see also Pierce, supra* (rejecting the plaintiff's contention that the distinction between supervisory and non-supervisory personnel was irrelevant when determining whether individuals, both of whom allegedly engaged in sexually harassing conduct, were similar). However, the Sixth Circuit has likewise made clear that exact correlation is not required for individuals to be proper comparators. *Ercegovich*, 154 F.3d at 352.

■ In the present case, the Court is not convinced that the difference in Plaintiff's and Brush's supervisory positions is relevant, so as to cause Brush not to be similarly situated to Plaintiff. Plaintiff and Brush were both supervisors, and they both were in Khatibi's chain of command. The wrongful conduct at issue concerned Plaintiff's and Brush's joint decision regarding how to secure funds at Plaintiff's store. The Court has no independent knowledge of the Speedway supervisory structure and without detailed evidence of Plaintiff and Brush's job responsibilities, the Court cannot determine that their positions were sufficiently dissimilar, so as to render the differences relevant for purposes of finding an appropriate comparator to Plaintiff. In light of the fact that Plaintiff and Brush were both supervisors, engaged in joint conduct regarding funds at Plaintiff's store and were subject to discipline by the same supervisor, the Court

concludes that there are genuine issues of material fact as to whether Plaintiff and Brush were similar in *all relevant respects*. In the absence of additional evidence regarding Plaintiff's and Brush's job responsibilities, experience, and disciplinary histories, the Court will not conclude, as a matter of law or as a matter of fact, that Brush cannot be a comparator for Plaintiff. Defendant's Motion for Summary Judgment, on the ground that Plaintiff cannot demonstrate pretext under the third *Manzer* approach, is OVERRULED.

For the foregoing reasons, Defendant's Renewed Motion for Summary Judgment (Doc. # 23) is OVERRULED in PART and SUSTAINED in PART. As a result of the rulings herein, Plaintiff's sex and pregnancy discrimination claims, brought pursuant to Title VII, the Pregnancy Discrimination Act, and Ohio Revised Code § 4112.02, remain for trial.[4] With regard to pretext, the issue of whether Plaintiff can establish pretext under the third *Manzer* test remains.

---

4. As stated, *supra,* the Court previously granted summary judgment on Plaintiff's disability discrimination claims, pursuant to the ADA and Ohio Rev.Code Ch. 4112 (Doc. # 20).